## METAL DOOR & TRIM CO. v. HUNT et al.

No. 23651.   Oct. 30, 1934.

Rehearing Denied Jan. 8, 1935.

Font L. Allen, for plaintiff in error.

Poe, Lundy & Morgan, H. R. Duncan, and L. M. Poe, Jr., for defendants in error.

PER CURIAM.  For convenience the parties hereto will be designated plaintiff and defendants, as they appeared in the trial court.

Plaintiff, an Indiana corporation, made a contract with the defendant Dan Hunt, Sr., whereby it agreed for a consideration of $14,000 to manufacture, deliver, and erect in place certain elevator and other equipment, including doors, in what is known as the Hunt Building in Tulsa, Okla. Defendant paid $6,000 of the agreed consideration, and having refused to pay more, plaintiff brought this suit to recover the balance of $8,000 alleged to be due it, and to foreclose a lien upon the building.  Others, having filed liens against the building, were also made defendants.

The defendant Hunt by answer alleged that under the provisions of section 132, O. S. 1931, the contract was void and unenforceable for the reason that the plaintiff was a foreign corporation and was not authorized to do business within the state of Oklahoma because of its noncompliance with section 130, O. S. 1931, requiring every foreign corporation, as a condition precedent to transacting business in Oklahoma, to perform certain duties, including the appointment of a resident agent of the state upon whom service of process may be made in any action in which said corporation shall be a party.

Other defenses pleaded by the defendants, in the nature of counterclaim and set-off, need not be further mentioned because of matters presently to be stated. Plaintiff, by way of reply, while admitting that it had not complied with the provisions of section 130, supra, pleaded that it had not engaged in doing business in the state of Oklahoma within the purview of the provisions of the Oklahoma statutes, and that it was not prohibited by any law from maintaining the action.

When the case was called for trial, coun-

sel for defendants orally moved the court to dismiss the plaintiff's cause of action on the ground that the pleadings disclosed that the plaintiff was a foreign corporation not authorized to do business in the state of Oklahoma, and that said pleadings also showed on their face that the matters sued upon are for doing business within the state of Oklahoma and that therefore the contract was unenforceable.

After argument, the trial court stated:

"The court finds that the contract in this case is entire and that the pleadings clearly show that the plaintiff is a foreign corporation and not authorized to do business in this state, and that the transaction as set out by the pleadings is an intrastate transaction. There is no question which may properly be submitted to the jury, and therefore the cause is dismissed."

From this ruling it appears that the trial judge treated the oral motion to dismiss as a motion for judgment on the pleadings, and we will so treat it here. Such a motion is not favored by the courts and should be sustained only where no cause of action or defense is stated and the pleading is not susceptible of amendment. It is in the nature of a demurrer and admits the truth of the allegations of the opposing party and must be liberally construed in favor of the pleader. It should be sustained only where the petition is so defective that the court is authorized, taking all the facts to be admitted, in concluding that no cause of action is stated entitling the plaintiff to relief. Good v. First National Bank of Roff, 88 Okla. 110, 211 P. 1051.

Did the court err in sustaining the motion?

Counsel for defendants pleaded and urge here that the contract is indivisible, and that the transaction as disclosed by the pleadings and exhibits was an intrastate transaction as distinguished from an interstate transaction. In their argument they emphasize language of the contract specifying that the seller was "to manufacture, deliver and erect in place elevator enclosures, hollow metal material and tinclad units as called for in addenda to architect's specifications," and also parts of the plaintiff's amended petition wherein it alleged that it was to perform certain labor within Oklahoma in fulfilling the contract. Counsel discuss and rely upon the cases of Browning v. Waycross, 233 U. S. 16, 58 L. Ed. 828; General Railway Signal Co. v. Virginia, 246 U. S. 500, 62 L. Ed. 854; Western Gas Construction Co. v. Commonwealth of Virginia, 147 Va. 235, 136 S. E. 646, together with other state and federal cases assumed to be in point.

Counsel for plaintiff contends that the transaction contemplated by the contract between it and the defendant, and upon which the suit is based, was an interstate transaction, and also that it was a single act pertaining to a particular business or transaction which it had a right to do without complying with the provisions of section 130, O. S. 1931. He discusses and relies principally upon the cases of Fuller v. Allen et al., 46 Okla. 417, 148 P. 1008; Chicago Crayon Co. v. Rogers et al., 30 Okla. 299, 119 P. 630; York Mfg. Co. v. Colley, 247 U. S. 21, as well as upon other cases from state and federal courts.

Section 134, O. S. 1931, specifically provides that the article (of which section 130 is a part) "shall not be effective in cases where its enforcement would conflict with the powers of Congress or the federal laws to regulate commerce between the states." Moreover, it is well settled by decisions of the Supreme Court of the United States, and also by numerous decisions of this court, that a state cannot prevent a corporation, by license, taxation, or otherwise, from making contracts within the state with reference to or in furtherance of interstate commerce. York Mfg. Co. v. Colley, supra; Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649; Chicago Crayon Co. v. Rogers et al., 30 Okla. 299, 119 P. 630.

We cannot agree with counsel for defendants that because the contract in the instant case contemplated the employment of men to perform the necessary labor in erecting and installing the articles and materials sold by the plaintiff to the defendants, the transaction was denuded of its dominant elements of interstate commerce. The ruling in the York Mfg. Co. Case, supra, completely refutes this claim. The principle of law therein announced is that the interstate commerce power embraces "that which is relevant or reasonably appropriate to the power granted," and "that the right to make an interstate commerce contract includes in its very terms the right to incorporate into such contract provisions which are relevant and appropriate to the contract made."

The facts in that case are somewhat similar to the facts in the case now under consideration. It involved an interstate contract for the sale of a complicated ice-making plant. The contract stipulated that the parts

should be shipped into the purchaser's state (Texas), and the plant there assembled and tested under the supervision of an expert to be sent by the seller and whose services were to be paid for by the purchaser. The supervisor in assembling the plant was also to have the assistance of mechanics furnished by the purchaser. It appears that the trial court, while recognizing that the contract of sale was interstate commerce, concluded that the stipulation as to supervision by the engineer sent by the seller was intrastate commerce and wholly separable from the interstate transaction, and decided that because of such supervision the foreign corporation had engaged in local business in the state of Texas, without having secured the permit required by the Texas statutes, and dismissed the plaintiff's suit. In reversing the decision of the trial court, the Supreme Court of the United States, after having announced the above principle of law, stated:

"The only possible question open therefore is, Was the particular provision of the contract for the service of an engineer to assemble and erect the machinery in question at the point of destination and to practically test its efficiency before complete delivery relevant and appropriate to the interstate sale of the machinery? When the controversy is thus brought in last analysis to this issue, there would seem to be no room for any but an affirmative answer. Generically this must be, unless it can be said that an agreement to direct the assembling and supervision of machinery whose intrinsic value largely depends upon its being united and made operative as a whole is not appropriate to its sale. The consequences of such a ruling if made in this case would be particularly emphasized by a consideration of the functions of the machinery composing the plant which was sold, of its complexity, of the necessity of its aggregation and unison with mechanical skill and precision in order that the result of the contract of sale—the ice plant purchased—might come into existence. In its essential principle, therefore, the case is governed by Caldwell v. North Carolina, 187 U. S. 622; Rearick v. Pennsylvania, 203 U. S. 507; and Dozier v. Alabama, 218 U. S. 124. * * *" 247 U. S. 21.

We deem it unnecessary here to enumerate the machinery manufactured and sold by the plaintiff to the defendant. It is apparent from the items specifically enumerated in the verified account attached to the plaintiff's petition that they were integral parts of what was conceived to be a completed whole when in place, and it is also apparent that the intrinsic value of the merchandise sold, in the language of the case just cited, "largely depends upon its being united and made operative as a whole." We conclude that such assembling and direction were appropriate to its sale, the same as in the York Case.

The applicable principle of law has been well stated by the Supreme Court of Alabama, in the case of Puffer Mfg. Co. v. Kelly, 198 Ala. 131, 73 So. 403, as follows:

"The question under consideration has been, in various forms, a frequent subject of decision in the American courts, and the consensus of judicial opinion is that the mere installation of machinery or other apparatus, including the assembly of its completed and adjusted parts, and its erection in its place for use, is but an incident of the sale, and is not, in that connection, an act of local business, if the sale and delivery is itself an act of interstate commerce."

The Supreme Court of Alabama cites a number of cases in which the principle has been applied.

As was held in Dozier v. State of Alabama, 218 U. S. 124:

"The protection of the commerce clause of the federal Constitution extends beyond the strict lines of contract, and inseparable incidents of a transaction of interstate commerce based on contract are also interstate commerce."

We have not overlooked the point made by counsel for defendant that the contract itself does not specify the articles are to be manufactured outside of the state of Oklahoma, and then shipped into the state to be erected and installed in the defendant's building. On the other hand, we cannot presume that the transaction contemplated manufacture and delivery by the plaintiff within the state of Oklahoma. If there is any presumption at all under the applicable rule, it is the other way, since the plaintiff alleged in its petition that it was a corporation duly organized, created, and existing by virtue of the laws of the state of Indiana, with offices and warehouses in La Porte, Ind., and that it was such a corporation and so located when the contract was made and performed. Obviously, the contract contemplated that the goods should be manufactured in Indiana and shipped from there into Oklahoma for erection and installation.

Having concluded that the transaction was interstate commerce, it is unnecessary for us to discuss the cases of Browning v. Waycross and General Railway Signal Co. v. Virginia, supra, as they were thoroughly

discussed and distinguished by the Supreme Court of the United States in the York Case.

We might rest our decision upon our conclusion that the transaction was interstate commerce, to which the Oklahoma statutes could not and do not purport to apply, but the question is one of considerable importance, and we therefore consider it proper to state that the decision of the trial court was also erroneous for the reason that the Oklahoma statutes do not prohibit a foreign corporation from the doing of a single act, whether local or not, pertaining to a particular business or transaction as distinguished from a series of acts requiring the time and labor of men for the purpose of livelihood, etc.

In the case of Fuller v. Allen, supra, this court said with reference to the meaning of the statute:

"The question now presented is, What is meant by transacting business? The best definition we can think of for this phrase is the doing or performing a series of acts which occupy the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure. It is well settled upon authority that the doing of a single act pertaining to a particular business or transaction will not be considered carrying on, transacting, or doing business. The mere term itself implies more than one transaction."

In the same case this court cited with approval Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 28 L. Ed. 1137, wherein it was held that the doing of a single act of business in another state does not constitute the doing of business within the meaning of foreign corporation laws; and another case wherein it was held that a contract between citizens of one state and a corporation of another state for the erection of a single plant is not a doing of business in the state where the plant is to be erected, within the statutes requiring foreign corporations to register before doing business therein.

And in Chicago Crayon Co. v. Rogers, supra, this court stated:

"It is settled that a single or isolated transaction of a corporation will not be void because of the failure by the corporation to designate an agent in the state."

Many cases from other jurisdictions in support of the proposition were cited. And this is true even though the transaction could be characterized as an intrastate transaction as distinguished from an interstate transaction.

This cause is therefore reversed, with direction to the trial court to reinstate the case and to proceed in accordance with the views herein expressed.

The Supreme Court acknowledges the aid of Attorneys Robert M. Rainey, D. A. Richardson, and John F. Webster in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After analysis of the law and facts was prepared by Mr. Rainey, and approved by Mr. Richardson and Mr. Webster, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.