## HAYDEN v. DALLAS COUNTY et al.
### No. 13102.

Court of Civil Appeals of Texas. Dallas.
Aug. 9, 1940.

Rehearing Denied Oct. 12, 1940.

Leake, Henry, Young & Golden, of Dallas, for appellant.

E. G. Moseley, Robert Ogden, and Clinton Foshee, Jr., all of Dallas, for appellees.

YOUNG, Justice.

Upon a hearing, appellant's petition for temporary injunction was overruled. and he has appealed. The subject matter of the suit was a written contract between Dallas County and the Automatic Voting Machine Corporation, dated May 29, 1940, for the lease of eighty voting machines over a four-months period—June 1 to September 30, 1940. Charles E. Hayden, as a taxpaying citizen and property owner, for himself and others similarly situated, sought to restrain the performance of the contract by either party, alleging same to be wholly void and unenforceable. Plaintiff's petition for interlocutory and permanent relief extends through 28 pages of the transcript, but the facts underlying his detailed charges of invalidity, touching the contract in question, must be briefly stated.

The Automatic Voting . Machine Corporation, herein referred to as company, is a Delaware corporation, and has never had a permit to transact business in Texas.

It was alleged and established through S. H. Lounsbury, the company's sales representative in Texas, and from other competent sources, that Dallas County had purchased, in 1936, some 180 voting machines; that about March 11, 1940, the Commissioners' Court passed an order directing the County Auditor to give notice relative to bids on rental of additional machines for a period not to exceed twelve months from June 1, 1940. Defendant company submitted a bid, whereby said machines would be furnished on a rental basis of $50 each over a four-month period, from June 1 to September 30, 1940; giving Dallas County the option, before the expiration of such date, of purchasing the lot at current selling prices, in which event the rentals payable September 1 were to be credited on the purchase price. In case the purchase option be not accepted, then the rental period should extend to May 31, 1941, at $75 per machine; the property so leased to be delivered at Dallas by May 15 and later returned to defendant's home office at Jamestown, N. Y., freight charges prepaid. On May 29, 1940, the county, by formal order, authorized the execution of a contract for the machines on the four-month basis, providing the acceptance thereof by the Voting Machine Company should be a waiver of the sales requirement in its aforementioned bid, which contract was thereupon duly signed by all parties. The company bound itself to make good by repair or replacement, any defects in material or workmanship; furnish free directions for operation of the machines; and send a representative to the county before the first election, for the purpose of properly instructing custodians thereof in their use. The machines were delivered to the county prior to June 27, 1940, and were duly accepted by court order; being obviously acquired for use by the Dallas County electorate in the July and August Democratic Primaries.

There was evidence before the court that the defendant company had heretofore rented and later sold numbers of the machines to Gregg and Bexar Counties under contracts similar, so far as applicable, to Dallas County's rental contract; performance bonds being entered into in each case by said corporation. The machines were in full compliance with Texas laws (Art. 2997a), as mechanical voting devices. Mr. Lounsbury testified further that his company, for educational purposes during election years, always send one or more technicians to localities where machines are maintained, to instruct officials in handling them and in their use; and the company would continue such service as long as necessary; that after 20 years, if Dallas County changed custodians, and made the request of the factory, it would send the necessary technicians down to break in new men.

Appellant's main grounds for asserting that Dallas County and defendant company are attempting to consummate a void transaction, are these: (1) That the voting machine concern is a foreign corporation, without a Texas permit; that the rental contract whereby voting machines are shipped into the State for temporary use, constitutes intrastate rather than interstate commerce; and that perforce of Art. 2031a, any payment under such lease contract is void and an unlawful diversion of tax funds, therefore, properly enjoinable; (2) that neither Arts. 1659, 2368a or 2997a, relative to competitive bidding, was complied with, rendering the rental contract void; it being argued that after the time had expired for acceptance of the Voting Company's bid, Dallas County accepted only a part of said original offer, without re-advertisement; the result being a mere counter proposition by the county that could not legally be the basis of a contract between the parties under aforesaid statutes.

As stated, appellant's suit is injunctive in character and challenges the right of either party to perform the above rental contract on account of alleged invalidity; hence its terms must be examined for a determination of whether defendant company was thereby engaged in an intrastate transaction. By the writing, the machines were to be shipped into Texas from another state, rented by Dallas County for four months, and then reshipped to Jamestown, N. Y., by the lessee; rentals being expressly payable to the lessor at its home office by September 1. The company was to furnish with the machines an instructor to enlighten custodians thereof in their use. The shipment of chattels from one state to another for lease only does not divest the transaction of its interstate character. This rule has been many times illustrated in the lease of moving picture films. Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308. The terms of the contract in suit are well within the pronouncement of our

Commission of Appeals in Ligon v. Alexander Film Co., 55 S.W.2d 1030, 1031. The rule was there stated: "It may be granted without further ado, that had the transaction between the company and Ligon contemplated the doing of nothing by the company except to manufacture the films according to contract requirements and to ship them to the theaters at Lubbock, for the use and benefit of Ligon, the transaction would have been one of interstate commerce exclusively." And, the equipment in question being of complex construction and mechanism, the agreement of defendant company to furnish technicians in aid of the purpose for which the machines were leased is only incidental to the main transaction of interstate commerce. Leschen & Sons Rope Co. v. Moser, Tex.Civ.App., 159 S.W. 1018; Southern Discount Co. v. Rose, Tex.Com.App., 296 S.W. 482; York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, 11 A.L.R. 611, and notes. Appellant cites Davis v. United Shoe Repairing Machine Co., Tex.Civ.App., Beaumont, 92 S.W.2d 1107, as strongly in support of his contention that the dealings between the instant parties are intrastate. As pointed out by Judge Combs, the facts in the Davis case were meager. Therein the Massachusetts lessor retained many elements of control over the rented machines not essential to the original transaction of lease, and emphasizes the truism that each case involving commerce, whether interstate or intrastate, must be determined by the facts of the particular controversy. So, in the present record, the test to be applied is, whether the so-called service obligation of defendant company was directly relevant and appropriate to the rental and use of these machines. The terms of defendant's contract are simply "to make good by repair or replacement any imperfections or defects in material or workmanship in said machines for the term herein stipulated; provided said machines shall be properly cared for and properly prepared for elections"; to "send a representative to the County before the first election at which the machines are to be used, to instruct the persons who will have charge of the machines, so that such persons can properly care for and prepare the machines for elections and can properly instruct the election officers and voters in their use". Considering the apparently complex mechanism of these voting devices to the uninitiated, their qualities of novelty to recurring sets of electors and officials, we conclude the above local features of the transaction were but incidental and appropriate to the lessors' duty of full performance. York Mfg. Co. v. Colley, supra; Houston Canning Co. v. Virginia Can Co., 211 Ala. 232, 100 So. 104, 35 A.L.R. 912; Metal Door & Trim Co. v. Hunt, 170 Okl. 240, 39 P.2d 72, 101 A.L.R. 350, and annotations. We have carefully studied the Mississippi Supreme Court decision in Case v. Mills Novelty Co., 193 So. 625, reported and annotated in 126 A.L.R. 1102, and find the facts therein are readily distinguishable from the situation at hand. In this connection, it should be noted that Art. 2997a, Sec. 11, of our statutes, requires authorities in charge to hold public schools of instruction in the use of voting machines, upon notice and before all elections. The statements of Mr. Lounsbury, that his company would continue to conduct educational schools for five to twenty years, if necessary, after machines are sold, form no part of the rental contract; are more or less gratuitous; and have no particular bearing on its interpretation.

But, if we be mistaken in our conclusion that Art. 2031a is inapplicable to the contract in question, still the penalty of Sec. 5 thereof declares the acts of the offending corporation void only "as to it". Thus, the rights of the other contracting party are not affected. Hence, in this instance, it is Dallas County, in its discretion, and not plaintiff taxpayer, that is entitled to raise the inhibition of the statute. The county has not seen fit to do so. "It is the general rule under such a statute that contracts made in violation thereof are not void but voidable only, at the election of citizens who are *parties thereto*, * * *". (Italics ours.) Fletcher on Corporations, Vol. 17, p. 595; Yewell v. Board of Drainage Com'rs, 187 Ky. 434, 219 S.W. 1049. Even if we should assume the contract voidable in its inception as regards Dallas County, it is one which this corporate body was authorized to make and was subject to later ratification, as was done. Williams v. Pure Oil Co., 124 Tex. 341, 78 S.W.2d 929; Kutzschbach v. Williamson County, Tex.Civ.App., 118 S.W.2d 930.

Finally, we think, the successive steps taken by the Commissioners' Court, resulting in the rental contract for voting equipment, were in substantial compliance with all relevant statutes on competitive bidding. Bids were first sought on the rental of eighty machines, for a period not

.to exceed twelve months. There was no response to the notice of the County Auditor, except from the Automatic Voting Machine Corporation. Its bid was on a four-month and eight-month basis, coupled with an option to purchase, not called for in the county's proposal. The latter saw fit to accept the short time bid, without condition or alternative, and the rental contract was consummated on the terms therein stated.

No irregularity is shown in filing more than one bid; or in the submission of an alternative and conditional bid by a company which is the sole bidder; the record disclosing no other concern in the United States to be engaged in the business of renting voting machines. The disposition of bids under such situation, it seems to us, is peculiarly a matter for the sound discretion of the County Commissioners.

All assignments and propositions upon consideration are overruled, and the order refusing a temporary injunction will be affirmed.

Affirmed.

BOND, C. J., not sitting.