CREAMERY PACKAGE MANUFACTURING COMPANY, a Corporation,

*Plaintiff and Appellant,*

SHERIDAN CREAMERY COMPANY, a Corporation, and SUNRISE CREAMERY COMPANY, a Corporation,

*Plaintiffs,*

vs.

THE STATE BOARD OF EQUALIZATION OF THE STATE OF WYOMING and M. H. LEITNER and ARCHIE EWOLDSEN, as the present members of the State Board of Equalization of the State of Wyoming,

*Defendants and Respondents.*

(No. 2327; March 5th, 1946; 166 Pac. (2d) 952)

266

For the Plaintiff and Appellant, the cause was submitted upon the brief of Guy and Edelman, of Cheyenne, Wyoming, and oral argument by Mrs. Ruth N. Edelman.

For the Defendants and Respondents, the cause was submitted upon the brief of Louis J. O'Marr, Attorney General, Hal E. Morris, Deputy Attorney General, and Frank M. Gallivan, Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by Mr. Morris.

## OPINION

BLUME, Chief Justice.

In this case it appears that about November 28, 1941, the State Board of Equalization assessed against the plaintiff, Creamery Package Manufacturing Company, a sales or use tax in the sum of $2,322.31, with penalty and interest thereon, making a total assessment of $3,013.90, on account of sales made by the plaintiff in the State of Wyoming during the years 1937 to 1941, both inclusive. This action was brought by the above named plaintiff for a declaratory judgment asking that the Court determine, in substance, that the plaintiff is not liable for any such taxes under the facts which appear

herein. Two creamery companies in this State were joined as plaintiffs, setting forth separate causes of action. All the plaintiffs claimed, generally, that the items involved in the case are not taxable under the laws of the State, but exempt under Sec. 4 of the Use Tax Act, for the reason that the goods were not generally stocked or kept for sale in the State of Wyoming. The State Board of Equalization, defendant herein, alleged that the taxes assessed were properly due and asked the Court to so declare. The only cause of action heard and tried by the Court was the cause of action on the part of the Creamery Package Manufacturing Company, plaintiff, hereafter designated as such, or by name.

The facts are substantially as follows: The plaintiff, Creamery Package Manufacturing Company, is an Illinois corporation, with headquarters in Chicago, Illinois. It has a branch office and a warehouse in Denver, Colorado, and the office in that state takes care of the sales of the plaintiff in Colorado, Wyoming, Utah, New Mexico, part of Nevada and part of Texas. It has a so-called statutory agent upon whom process may be served in case of a suit against the plaintiff. That appointment was made in connection with the so-called domestication of the plaintiff corporation in this State, and the reason for that appointment is mentioned in the case of Creamery Package Manufacturing Company vs. Cheyenne Ice Cream Company, 55 Wyo. 277, 100 Pac. 2d 116. That agent is not a business agent of the plaintiff and does no business for it, as that term is ordinarily understood. Plaintiff is and has been engaged in the business of manufacturing, distributing and selling creamery and ice cream machinery, equipment and supplies throughout the United States, including milk bottles, caps, cartons and other articles used by creameries. It has not now and never has had an office, sample room, store, warehouse, plant, telephone listing,

business agent or business headquarters of any kind in the State of Wyoming. It never has taken out a sales tax license and has never obtained a certificate to collect the use tax in this State. Its method of operation in connection with sales was, during the time involved herein, and is substantially as follows: A salesman of the company travels through the state occasionally to take orders; he lives in Denver, Colorado, and has no headquarters in this State. He has no authority to enter into any agreement with a customer that the merchandise ordered would be supplied by plaintiff, and no express authority to make collections, compromise disputes or bind the company in any manner. The only authority which he has is to take orders, which are subject to approval by the plaintiff at its office in Denver, Colorado, and in some instances at the plaintiff's office in Illinois. All goods except as herein mentioned are shipped F. O. B. railroad cars, Denver, Colorado, and in some instances F. O. B. railroad cars in Illinois. The purchaser pays the freight and assumes the risk of delivery of the goods. At times the purchaser pays for the goods to the salesman at the time he takes an order. Generally the goods are sold on open account and payments are sent by check to the Denver office after the goods have been delivered. Sometimes payments are made to the salesmen on subsequent calls. Orders are not always received at the Denver office through a salesman, for at times purchasers in the state send an order directly to Denver. Again, at other times, customers in this State call at the plaintiff's office in Denver, and make their purchases directly from that office. Occasionally plaintiff sells an entire unit of refrigerating equipment in this State. The usual method in such cases is that the equipment is sent F. O. B. railroad cars at the station of the purchaser in this State. The plaintiff, if requested, sends an engineer to supervise the installation of the equipment, but the

actual installation is made by men engaged by the purchaser in this State. To make this point clearer, the testimony of Mr. Ziser, the only witness in the case, shows the following: The plaintiff sold this equipment in this State once or twice a year—on the average twice a year. "Q. Will you describe to the Court the exact arrangement you made with the customer when you have an installation of that type? A. The order is taken by our salesman for the installation of a plant, f. o. b. destination, and set up in the customer's plant—the terms are sometimes cash and sometimes they are handled on a time-payment basis—the freight and the installation charges are added to the original price of the plant in the invoice. Payments are sent to Denver. Q. When does the title to any machinery or equipment which you sell to the customer pass? A. It passes when it is paid for .It is upon the request of the customer that the installing engineer does the work. Q. Now, Mr. Ziser, I hand you this exhibit (the assessment of taxes made) and I will ask you if you know and can point out to the Court any cases therein where you made an installation of machinery in the State of Wyoming. A. I don't believe I can. This merely shows yearly sales to our customers and it doesn't show the items purchased. Q. Can you state of your own knowledge whether it is likely that there were some installations made among these items? A. I would take it as a general average—I would say that there are probably some installations in here".

The Trial Court held that the plaintiff is subject to the payment of the tax assessed against it by the State Board of Equalization, and from the judgment entered in that case, the plaintiff has appealed to this Court. The contentions made in this Court by the State Board of Equalization are: First, that the sales in question were not sales in interstate commerce and are taxable under the Wyoming Sales Tax Act; and second, that

the plaintiff is required to collect the use tax upon sales made by it which are subject to the provisions of the Use Tax Act. While the assessment herein made does not disclose whether it was for a sales tax or a use tax or for both, counsel for the State Board of Equalization claim that the tax for any machinery installed is a sales tax, and the remainder of the taxes are use taxes. We might say, in passing, that if their contention as herein made ,is correct that the plaintiff had a business office in this State, and in fact was doing business in this State, so that the Berwind-White case hereafter cited is controlling, as counsel claim, there seems to be no reason why all the taxes herein may not be called sales taxes as in the Berwind-White case, or vice-versa, why they may not all be called use taxes, as the tax in the West Publishing Company case, hereafter cited, was called.

I.

It is stated in 20 C. J. S. 51, dealing with the subject as to what constitutes doing business in the State, as follows: "A foreign corporation is not doing, carrying on, transacting, or engaging in business in state, within the meaning of the statutes under consideration, by merely appointing an agent for the transaction of future business therein". In Commonwealth vs. Chattanooga Implement & Manufacturing Co., 126 Ky. 636, 637, 104 S. W. 389, the Court stated: "The appointment of an agent is a step towards carrying on business; but, unless the agent acts under his employment, the business is not carried on in this state". In the case at bar the so-called statutory agent does none of the ordinary business for the plaintiff corporation in the state whatever, but is merely appointed as agent upon whom process might be served in case plaintiff corporation should be sued, so that it would seem that the rule above mentioned should be even more applicable in this case. The agent was appointed in connec-

tion with the domestication of the plaintiff in this State, authorizing it in the future to conduct business in this State. The question herein would seem to be not whether or not the corporation was authorized to do business in this State, but whether or not it actually did business within it. Counsel have cited no cases in point to the contrary, and we have found none.

The statutes which require foreign corporations to domesticate in this State are designed in the main to protect residents of the State in their local transactions with the corporations in this State, particularly to make them subject to the service of process in this State. Verdigris River Land Company vs. Stanfield, 25 Okla. 265, 105 Pac. 337. In Elwell vs. Adder Machine Co., 136 Wisc. 82, 116 N. W. 882, the Court stated, in reference to the requirement of domestication of foreign corporations in the state, as follows: "There must be read into the foregoing statutes, where they forbid the transaction of business in this state and the acquisition, holding, and disposal of property in this state, an exception of such business as constitutes interstate commerce and an exception of such property as is acquired, held, or disposed of in this state in carrying on interstate commerce. Also, where every contract is declared to be void, we must except from that provision such contracts as relate to interstate commerce". In Major Creek Lumber Co. vs. Johnson, 99 Ore. 172, 195 Pac. 177, the Court stated: "Our statute requiring foreign corporations to comply with certain conditions before engaging in business within the State of Oregon has no application to the contract of a foreign corporation made, and so far as its obligations are concerned to be performed, in another state. All of the contracts executed by the plaintiff company for cutting timber, manufacturing the same, and shipping the products were to be performed in the State of Washington, and the statute does not apply thereto". If it is not neces-

sary to appoint a resident agent in such cases the actual appointment of one who does no business in the state would seem to have no effect upon the transactions which are purely interstate. In other words, it would seem that such appointment cannot transform purely interstate transactions into one that does not ultimately become, at least partially, one that is intrastate.

II.

Defendant claims that the fact that the plaintiff sent an engineer into this State for the purpose of supervising installation of the equipment herein above mentioned is a circumstance showing that the plaintiff is doing business in this State so as to subject it to the imposition of taxes and the duties in connection therewith. We held in the case of Creamery Package Manufacturing Company vs. Cheyenne Ice Cream Company, supra, that the supervision of such installation is merely incidental to interstate commerce, and does not constitute doing business in this State. A later note on that subject is found in 146 A. L. R. 947, where it is stated: "Later cases recognize that where assembly or installation of an article shipped by a foreign corporation into a state pursuant to an order solicited by its agent constitutes a necessary act in the preparation thereof for usefulness to the customer, and so an inherent part of an interstate transaction, agreeing to perform or performance of such acts does not require the seller to conform to state statutes imposing conditions for doing business, or make the transaction intrastate in character". The note, in addition to our case above mentioned, also cites: Mandel Bros v. Henry A. O'Neil, Inc. (1934; CCA 8th) 69 F (2d) 452; Weber Showcase & Fixture Co. v. Co-Ed Shop (1936) 47 Ariz. 415, 56 P (2d) 667; Metal Door & Trim Co. v. Hunt (1934) 170 Okla. 240, 39 P (2d) 72, 101 ALR 350; Brandtjen & Kluge v. Manson (1941) 9 Wash (2d) 362, 115 P (2d) 731. It

would seem from these authorities that the fact above mentioned is of little, if any, aid, in the solution of the questions before us.

## III. SALES TAX.

We have heretofore considered the question of sales taxes in Blind Bull Coal Co. vs. State Board of Equalization, 55 Wyo. 438, 101 Pac. 2d 70; Morrison-Knudsen Co., Inc., et al. vs. State Board of Equalization, 58 Wyo. 500, 135 Pac. 2d 927. We shall not pause to analyze these cases. The case at bar is unlike them. Counsel for respondent rely upon and have cited to us McGoldrick vs. Berwind-White Coal Mining Company 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876; McGoldrick vs. A. H. Dugrenier, 309 U. S. 70, 60 S. Ct. 404, 84 L. Ed. 584; Nelson vs. Montgomery Ward & Co., 312 U. S. 373, 61 S. Ct. 593, 85 L. Ed. 897; Nelson vs. Sears Roebuck & Co. 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888. In these cases the corporation which was held to be liable for the sales tax was held to have a business office in the state in which the tax was assessed, and in which business of the corporation was transacted, and the tax was upheld mainly on that ground. The case of West Publishing Company vs. Superior Court, 20 Calif. 2d 720, 128 Pac. 2d 777, while involving a use tax, was decided upon the same principle as the foregoing cases, namely upon the theory that the West Publishing Company maintained business offices in the State of California and did local business therein. It paid its salesmen, who lived in California, a salary as well as commissions. It did not itself lease the offices, but each salesman, particularly in San Francisco and Los Angeles, had established headquarters with a law firm where they spent part of their time every day. From fifteen hundred to two thousand volumes of law books were kept within these offices, and the law firms had the use of the books in these offices, to which

arrangement the West Publishing Company had given its consent. The San Francisco and Los Angeles headquarters were listed in telephone and building directories as addresses of the West Publishing Company. Such listings, while made at the instance of the lessee, were recognized by the West Publishing Company through various articles published in California legal journals and periodicals; the latter had advertised these locations as its San Francisco office and its Los Angeles office. The Court, accordingly, under these and other facts which need not be detailed here, concluded that the situation was governed by the case of Felt & Tarrant Manufacturing Company vs. Gallagher, 306 U. S. 62, 59 S. Ct. 376, 83 L. Ed. 488, in which it clearly appears that the corporation involved in that case kept an office in the State of Illinois. The case, accordingly, does not appear to be in point in this case.

The case of United Autographic Register Company vs. McGoldrick, 260 App. Div. 157, 21 N. Y. S. 2d 129, 32 N. E. 2d 826, is a case similar to the foregoing except that in that case a sales tax was upheld instead of the use tax. It appears in that case that during the taxable period the petitioner, the United Autographic Register Company, carried on a very large business of selling in New York City, maintaining a staff of sixteen or seventeen solicitors in New York City, who operated from an office at No. 9 Park Place, New York City. After orders had been taken the agents took them to their own office in New York and from there forwarded them to the home office of the company in Chicago, Illinois, and when approved, the shipments were made F. O. B. factory, Chicago or Cleveland. In one form of the petitioner's contracts was a provision that the order could not be countermanded by the customer. The Court, accordingly, held that the required approval was in fact automatic. The case was decided by a vote of three to two of the judges, the minority

holding that the contracts involved were really consummated outside the City of New York. Similar cases are Montgomery Ward & Co., Inc. vs. State Commission of Revenue & Taxation, 156 Kan. 408, 133 Pac. 2d 1008; Crane Company vs. Arizona Tax Commission, (Ariz.) 163 Pac. 2d 656. Counsel also have cited to us the case of International Shoe Company vs. State of Washington, decided on December 3, 1945, 66 S. Ct. 154. That case upheld the judgment of the Supreme Court of Washington, 154 Pac. 2d 801. The main point argued in that case was as to whether or not hte International Shoe Company was sufficiently present in the State of Washington so that process served upon local agents and mailed to the corporation at its head office was sufficient. The Supreme Court of Washington, holding that it was, held further that the Shoe Company was liable for contributions under the unemployment compensation act, and it was contended that the statute imposed an unconstitutional burden on interstate commerce insofar as the Shoe Company was concerned. The Supreme Court of the United States stated on that point as follows: "Appellant's argument, renewed here, that the statute imposes an unconstitutional burden on interstate commerce need not detain us. * * * Int. Rev. Code, Sec. 1606 (a), provides that 'No person required under a State law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate or foreign commerce, or that the State law does not distinguish between employees engaged in interstate or foreign commerce and those engaged in intrastate commerce.' It is no longer debatable that Congress, in the exercise of the commerce power, may authorize the states, in specified ways, to regulate interstate commerce or impose burdens upon it".

All of the foregoing cases heretofore mentioned are accordingly distinguishable from the case at bar, and

so we must proceed to consider later cases which seem to be controlling herein. In the case of McLeod, Commissioner of Revenues vs. J. E. Dilworth Co., 205 Ark. 780, 171 S. W. 2d 62, the question was as to whether or not a retail sales tax could be assessed upon the Dilworth Company under the following facts as stated by the Supreme Court of Arkansas:

"Appellee, J. E. Dilworth Company, is a corporation organized under the laws of Tennessee, with its home office and place of business in Memphis, Tennessee. It is not qualified to do business in Arkansas, and has no sales office, branch plant, or other place of business in this State. Orders for its machinery and mill supplies are procured in Arkansas by two traveling representatives (both domiciled in Memphis). The orders are subject to the approval of the home office. When the order is approved in Memphis, the merchandise is shipped f. o. b. Memphis, title to the merchandise being relinquished upon delivery to the common carrier. The traveling representatives do not collect any money. Appellee also receives orders by mail and telephone from Arkansas customers, which orders are accepted in Tennessee, and merchandise delivered to a common carrier in Tennessee with no title retained. Appellee is engaged in the general interstate business. Arkansas customers sometimes go to the office of the company in Memphis and buy goods direct, loading the same on the purchaser's truck and bringing the merchandise back to Arkansas".

It may be noticed that the facts in that case were substantially like those in the case at bar. The differences are too slight to be considered. The Supreme Court of Arkansas held that no sales tax could be assessed against the Dilworth Company and distinguished the Berwind-White case and other cases theretofore decided by the Supreme Court of the United States. The case was carried to the Supreme Court of the United States and was decided by that Court on May 15, 1944, (322 U. S. 327, 64 S. Ct. 1023), and the Supreme Court of

Arkansas was upheld. Former cases were distinguished and the Dilworth Company was held not to be liable for any sales tax in the State of Arkansas. It would seem to be clear that under these decisions the plaintiff, Creamery Package Manufacturing Company, is not liable for any sales taxes in this State, at least as to the bulk of its transactions.

As already stated, about twice a year the plaintiff was accustomed to sell machinery in this State, to be installed, which was shipped F. O. B. railroad cars to some station in Wyoming, unless perhaps, the machinery was paid for in cash. The assessment made in this case, either by the trial court or the State Board of Equalization, does not disclose whether or not items for such sales were included therein. The assessment shows total sales, exempt sales, and taxable sales, all in bulk, without indicating which were taxable and which were exempt. The testimony on the point already heretofore set out, is, at best, obscure. The witness Ziser was unable to tell whether any such items were included. He stated finally that it was "probable" that some were included, but whether these were items on which the cash was paid,—in which event, as he stated, the title passed at that time—does not appear. The whole point is left too uncertain in the record. For aught we know, it may be academic, and so we do not express any opinion as to whether or not a sales tax would be assessable on such items. In the present state of fluctuating authorities, it does not behove the court to pass upon questions involving interstate commerce, unless we definitely know that we have no merely academic question before us. Parenthetically, we may add this: It was argued in open court before us that our decision herein would automatically dispose of the other causes of action herein. We are unable to see that in view of the light we have on the subject at present. Counsel for both sides, in submitting this case only partially, have,

perhaps, not sufficiently considered the interrelation between sales and use taxes as applicable in this case. The co-plaintiffs of Creamery Package Manufacturing Company pleaded and claimed that the goods which they bought from the Creamery Package Manufacturing Company are exempt from taxation because not generally stocked in and readily obtainable in the State, and hence, exempt from taxation under Sec. 4 (k) of the Use Tax Act. While these pleadings are not directly before us, yet the same claim is called to our attention by the pleadings of the Creamery Package Manufacturing Company, compelling us to be cautious not to prejudge the point, if that can be avoided, as to the co-plaintiffs of the Creamery Package Manufacturing Company who are the real parties in interest, and who are not before us. It goes without saying that it would at least be advisable when we are called upon to interpret perhaps inharmonious provisions of the statute that the parties directly interested should be before the court. So, unless the claim of exemption is abandoned, of which there is no evidence as to the co-plaintiffs of the Creamery Package Manufacturing Company, one of the main questions that ought to be determined first is as to whether or not that exemption is applicable herein. By calling the tax here considered a sales tax and holding it so, and imposing liability therefore on the seller, would seem to nullify at the option of the seller the benefit of the exemption under the use tax in favor of the purchaser, if such exemption in fact exists, for under Sec. 4 (e) Chapter 102 Session Laws of 1937—the Sales Tax Act—the tax "shall be a debt from the consumer or user to retailer until paid". Hence, it is clear that the contention that the transactions here considered come within the Sales Tax Act, even if true, takes only a partial view of the point involved and leaves the substance untouched. The real question is, even if the tax involved is a sales tax, whe-

ther or not it is also at the same time a use tax, exemption from which can be claimed by the purchasers; further, if the provisions of the Sales Tax Act and the Use Tax Act are, as applied to such a case, inconsistent, whether or not they can be harmonized, and if not, which provision should control. None of these points have been argued or are before us. By assessing the tax here considered, against the Creamery Package Manufacturing Company, if any such in fact was assessed, the State Board of Equalization attempted, perhaps. to evade the foregoing questions—the real issue—in this case.

## IV.   USE TAX.

It is contended herein, that the plaintiff, Creamery Package Manufacturing Company, notwithstanding that it is a foreign corporation, is a retailer in this State, maintaining a place of business therein, and since it made sales "of tangible personal property for storage, use or other consumption in this state," it can be made to act as a compulsory agent for the collection of use taxes, within the contemplation of Sec. 6 of the Use Tax Law, being Chapter 118 Session Laws 1937. We have already shown that it does not maintain a business office in this State, and the West Publishing Company case, heretofore cited, is not, accordingly in point herein.

In State Tax Commission vs. General Trading Company, 233 Iowa 877, 10 N. W. 2d 659, an assessment of a use tax was upheld. In that case it appears that the defendant, General Trading Company, not qualified to do business in Iowa, and doing purely interstate business, did not maintain any office, distribution house, sales house, warehouse or any other place of business, or any agent located in Iowa through which or whom it sold tangible personal property to persons in Iowa. From time to time the defendant sent traveling sales-

men from Minnesota into Iowa, none of whom lived in Iowa or had headquarters in Iowa. These traveling salesmen solicited orders for merchandise in Iowa, which orders were subject to acceptance or rejection at defendant's office in Minnesota. The salesmen were not authorized to make and did not make any contracts in Iowa. In filling such orders as were accepted at the office in Minnesota the merchandise was shipped from Minnesota to Iowa, by delivery to common carriers or by delivery to U. S. postal departments. The purchasers paid all costs of transportation by carrier or parcel post.

It appears, accordingly, that the facts in that case were substantially the same as the facts appearing in the J. E. Dilworth Company case above mentioned. The Court held that under the laws of Iowa the General Trading Company was a retailer maintaining a place of business in Iowa, and that as such it was subject to the use tax. It appears that the company voluntarily subjected itself to the jurisdiction of the Court as also was the case in the J. E. Dilworth Company case above mentioned. The case was carried to the Supreme Court of the United States, General Trading Company vs. State Tax Commission of Iowa, 322 U. S. 335, 64 S. Ct. 1028. The Supreme Court of the United States in an opinion handed down on the same day as the opinion in the Dilworth Company case, held that the finding of the Supreme Court of Iowa, to the effect that the General Trading Company was a retailer maintaining a place of business in Iowa, was binding upon the Court. In connection with holding that the company could be compelled to collect the sales tax the Court merely stated: "To make the distributor the tax collector for the State is a familiar and sanctioned device". Mr. Justice Jackson and Mr. Justice Roberts dissented, holding that "no state has a constitutional warrant for making a tax collector of one as the price of the privil-

ege of doing interstate commerce''. It appears somewhat strange as pointed out in the opinion of Mr. Justice Rutledge, that under an almost identical state of facts the J. E. Dilworth Company should be held not liable for a sales tax, and that the General Trading Company should be held liable for a use tax. An interesting article on these decisions is contained in 57 Harvard Law Review, 1086 to 1097. It also seems somewhat strange that a retailer maintaining no place of business in a state, can, by legislative fiat, be said to have such place. But the Iowa Court and the United States Supreme Court have spoken on the subject, and we shall proceed to consider as to whether or not the law in this State brings the case at bar within the decisions above mentioned. Sec. 6 of Chapter 118, Session Laws of 1937, relating to the use tax provides that "Every retailer maintaining a place of business in this State, and making sales of tangible personal property for storage, use or other consumption in this State, not exempted under the provisions of section 4 hereof, shall at the time of making such sales collect the tax imposed by this Act from the purchaser''. Subdivision (j), Sec. 2 of the same Act provides: " 'In this State' or 'in the state' means within the exterior limits of the State of Wyoming, and includes all territory within such limits owned by or ceded to the United States of America''. Subdivision (f) of Sec. 2 of the same Act provides:

" 'Retailer' means and includes every person engaged in the business of making sales for storage, use or other consumption or in the business of making sales at auction of tangible personal property owned by such person or others for storage, use or other consumption; provided, however, that when in the opinion of the Board it is necessary for the efficient administration of this Act to regard any salesmen, representatives, peddlers or canvassers as the agents of the dealers, distributors, supervisors or employers under whom they

operate or from whom they obtain the tangible personal property sold by them, irrespective of whether they are making sales on their own behalf or on behalf of such dealers, distributors, supervisors or employers, the Board may so regard them and may regard the dealers, distributors, supervisors or employers as retailers for purposes of this Act".

The scope and full meaning of Sec. 2 (f), above quoted, is not clear. We hardly know what to make of the term "peddlers". The State Board of Equalization may, it seems, regard an agent in this State as being an alterego or identity of the employers, dealer or distributor. The provisions by their terms do not state that the employer or distributor must be one located in this State, but Sec. 6 providing that only a retailer who has a place of business in this State is liable for the use tax distinctly limits the application of the terms employer, dealer and distributor. Counsel for the State Board of Equalization ask that we construe the foregoing provisions liberally. In other words, they would eliminate from the statute the provision that the retailer must have a place of business in this State, and they would have us do so because the Supreme Court of the United States has, since our Use Tax Act has been passed, been more liberal than formerly in interpreting what does and what does not interfere with interstate commerce. But, of course, our legislature is still supreme within its proper sphere, and its language, if within constitutional boundaries, cannot be struck out, modified or changed by anything said by the United States Supreme Court. So someone must have a place of business within the State, in order that a compulsory collector of the use tax can come into existence. Construing the provisions of Sec. 2 and Sec. 6 together, they would, perhaps, mean as applied to a case like that at bar, that if either the employer or the agent maintains a place of business in this State liability under the tax ensues. That would perhaps bring the provisions within the spirit of the

Berwind-White and other like cases, but they do not seem to reach the case at bar. The Iowa law, Sec. 6943, 102, Code of Iowa, 1939, contains the provisions of Sec. 2 (f), Chap. 118, supra, but in addition to that contains a specific provision defining the term " 'Retailer maintaining a place of business in this State'." That provision as abbreviated by the Supreme Court of Iowa, in the case above mentioned, is as follows: "a 'retailer maintaining a place of business in this state' shall include 'any retailer having * * * within this state * * * any agent operating within this state under the authority of the retailer * * * irrespective of whether such * * * agent is located here permanently or temporarily, or whether such retailer * * * is admitted to do business within this state". That provision is broad. We have nothing like it in this State. We are unable to see how we can give Sec. 2 (j) that meaning, nor do we see how we can go beyond the cases from Iowa, far as those cases already go. Under present legislation in this State we cannot, accordingly, adopt the rule of these cases. We do not, of course, in order not to be misunderstood, say that if this State should adopt the legislative provision in Iowa, last above mentioned, that that necessarily would make the rule of the Supreme Court of Iowa, and of the Supreme Court of the United States applicable. As already stated, the General Trading Company appeared voluntarily in the case, and we express no opinion as to what would be the result if a corporation should not appear voluntarily, or have a statutory agent within this State upon whom process in the state might be served. See discussion on that point in State Tax Com. vs. General Trading Company, supra. We think, in short, that we are not warranted in holding that the plaintiff in this case has a place of business in this State, when in fact it has none, or that it can be compelled under present authorities to become

an agent of this State in collecting the use tax involved herein. It is, therefore, not liable for any.

The judgment of the District Court, accordingly, will be reversed with directions for further proceedings, if any, not inconsistent with this opinion.

RINER, J., and KIMBALL, J., concur.