

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 21, 1948

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-704

Re: Imposition of inheritance tax where community estate completely disposed of by joint will and trust instrument at death of husband

Dear Sir:

You have requested an opinion of this office as to whether an inheritance tax is due by reason of the receipt of certain funds from the community estate of T. G. Hendrick, deceased, and his surviving wife by the Baptist Foundation of Texas as trustee. The facts of the case as disclosed by your file and the brief submitted by the attorney for the executor, The Fort Worth National Bank of Fort Worth, Texas, are as follows:

On January 22, 1929, T. G. Hendrick and Ida Hendrick, husband and wife, executed a joint and mutual will in the opening paragraph of which they declared that

"We, T. G. Hendrick and Ida Hendrick, husband and wife, . . . having mutually agreed and contracted with each other as to the disposition to be made of all of the property owned by us, as hereinafter set out . . . do Make, Declare and Publish this as our Joint and Mutual Last Will and Testament, and the last will and testament of each of us . . .

"We first state that all of the property of every kind and character now owned as well as any that may hereafter be owned by us, or in which either of us may have an interest, is community property owned by us since our marriage and owned one-half by each of us, whether the apparent title to such property is in the one or the other or in both of us, having earned the property together we desire to dispose of it by joint will in accordance with the terms hereof, and each of us hereby solemnly pledges his and her faith to the other that he or she will not alter or change or attempt to alter or change such disposition of the property, unless by proper instrument likewise jointly

signed by us, and particularly that the survivor of
us will not make or attempt to make any change in
such disposition."

In the twelve succeeding pages of the will various spe-
cific bequests are made and numerous trusts set up. These pro-
visions are not material to your inquiry since from time to time
various codicils were executed, eleven in all, which resulted in
an almost complete departure from the provisions of the original
instrument.

The will provided that if the death of Ida Hendrick oc-
curred before the death of T. G. Hendrick, T. G. Hendrick as
trustee, without necessity of giving bond, was to remain in pos-
session of all the interests of Ida Hendrick and the property own-
ed by herself and her husband, except the devises to Ida Hendrick's
nieces, with full power and authority to dispose of all or any part
of such property; and at his death the property then on hand, rep-
resenting the corpus of the trust funds, was after the payment of
individual legacies, inheritance, estate and other taxes, and ex-
penses of administration to pass to and under control of named
trustees for the different uses and purposes provided in the will.
However, if T. G. Hendrick died before Ida Hendrick, the rights,
powers and duties of the trustees were to vest immediately in
them subject alone to the right of Ida Hendrick to receive $1,000.00
or more per month during the remainder of her life from a trust
of $500,000.00 to be established as specifically provided in the
fifth codicil of the will.

In the sixth codicil to the will, Item First reads as fol-
lows:

"Reference is here made to the fifth codicil to
our will executed by us on April 19, 1934. In Item
First thereof we instructed our executor to sell from
our property and set apart bonds, securities and/or
other items of property then of the reasonable value
of $500,000.00 before any of the trusts provided for
by us are set up and before any of the devises by in-
dividuals are paid. It is our purpose and intention,
and we here now so will and direct, that said $500,-
000.00 of property and securities shall be appropriat-
ed from . . . Ida Hendrick's one-half interest in our
properties, if such one-half interest shall . . . be suf-
ficient for the purpose, but if not then all of her one-
half interest shall be appropriated and a sufficient a-
mount . . . from T. G. Hendrick's one-half interest
shall be added thereto to make up the total of $500,-
000.00 . . ."

In this same codicil Ida Hendrick covenanted and agreed with T. G. Hendrick and with all of said other devisees, both the individuals and the bank trustee, that in the event of the death of T. G. Hendrick before herself she would immediately after his death execute all instruments and conveyances thought by the trustee to be necessary or advisable to effectuate the payment of the devises to other individuals and the delivery and vesting of such property in the trustee of all property in such trust created by the will.

Item Second of the sixth codicil provided that

"In the event the death of T. G. Hendrick occurs before that of Ida Hendrick, the latter shall continue during the remainder of her life to have the free possession and use of the lot and the improvements known as 802 Orange Street in the city of Abilene, Texas, . . . which property is sometimes occupied and used by us for residential purposes, and she shall also have such free use and possession of all furniture and fixtures and other personal property used by us in connection with such premises, including the family automobile so used at the time; and in such event, we direct that our executor and thereafter our bank trustee, from funds belonging to the trust created for the establishment and maintenance of the 'T. G. and Ida Hendrick Home' shall pay all taxes that may accrue against said real and personal property, pay all insurance premiums on policies relating thereto and keep the premises and estate in good care all without charge or expense to Ida Hendrick."

These provisions covered everything to be retained by Ida Hendrick in the event T. G. Hendrick predeceased her.

In the seventh codicil Item Second again refers to the $500,000.00 trust fund to be established in the event Ida Hendrick survived T. G. Hendrick out of her one-half of the community property (or out of the joint property if her community one-half was insufficient). Said item confirmed the creation of the trust and devised and bequeathed same to the Fort Worth National Bank as trustee. It was provided that at the death of Ida Hendrick title to the property and assets belonging to such trust at the time of her death were to remain in the Fort Worth National Bank as trustee to be used by it in setting up other trusts provided for in the will.

In the eleventh and last codicil to the will the various trusts here involved were established. By its terms $1,000,000.00

was devised to the Baptist Foundation of Texas as trustee to be held, managed and the income therefrom disposed of for twenty-one years as specifically provided: 10% thereof to be used for "the aid and assistance of young men being educated for the ministry at the Southwest Baptist Theological Seminary, of Fort Worth, Texas"; 10% thereof to be used by the Relief and Annuity Board of the Southern Baptist Convention in the "aid of old worn out Baptist preachers"; 10% thereof to be used by the Baptist General Convention of Texas "in its ordinary Foreign Missions Work"; 40% thereof to be used by the Foreign Mission Board of the Southern Baptist Convention "for relief work . . . and caring for the medical needs and religious welfare of needy people anywhere in the world; or, at the discretion of the Executive Board of the Baptist General Convention of Texas, part of these funds may be so used by other agencies under its jurisdiction"; 30% thereof to be used by the Home Mission Board of the Southern Baptist Convention "for relief work . . . and religious welfare of needy people in the Homeland; or, at the discretion of the Executive Board of the Baptist General Convention of Texas, part of these funds may be so used by other agencies under its jurisdiction." Twenty-one years after this trust became effective its corpus is to be paid to the Baptist General Convention of Texas to be devoted by it to the five charities above mentioned, on the same pro rata basis above set out, so that the assets of the trust will be exhausted ten years after such distribution begins.

Following the death of T. G. Hendrick on July 8, 1946, the will and all of the codicils thereto, forming a 60-page instrument, was admitted to probate on July 29, 1946, as the last will and testament of T. G. Hendrick, deceased. On August 10, 1946, Ida Hendrick filed in the county court an instrument which recited the execution by herself and her husband of the will theretofore admitted to probate and declared: "I am satisfied with the dispositions of our estate made thereby and do ratify and confirm such will and each of the eleven codicils."

Of the million-dollar trust fund described above, the First Item is clearly exempt from payment of any inheritance tax under the provisions of Chapter 5, Title 122, V.C.S., since it comes within the exemption provided by Article 7122 for "property passing to or for the use of . . . any religious, educational or charitable organization when such bequest, devise or gift is to be used within this state." Presbyterian Church in U. S. v. Sheppard, Civ. App., 198 S.W. (2d) 282, writ ref. n.r.e. The executor for the estate admits that this exemption cannot be claimed for the other four items previously listed, inasmuch as these items are not to be expended within the state, but contends that only one-half of said amounts went to the trustee out

of the estate of T. G. Hendrick, deceased, and that the remaining one-half paid over to the Baptist Foundation of Texas, trustee, was paid over out of the share of Mrs. Ida Hendrick in the community property of herself and her deceased husband and was not subject to tax by virtue of Article 7117, V.C.S. In effect their contention is that the trustee acquired one-half of said funds by gift from Mrs. Hendrick rather than by the will of Mr. Hendrick. If their contention is correct, the taxes due by reason of the receipt of said funds on the death of T. G. Hendrick should be computed on the basis of the amount received from his community interest regardless of whether or not the transfer of Mrs. Hendrick's interest is taxable at her death under the provisions of Article 7117, V.C.S.

The relevant provisions of Article 7117 are the following:

"All property within the jurisdiction of this State . . . which shall pass absolutely or in trust by will . . . or by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor, shall, upon passing to or for the use of any person, corporation, or association, be subject to a tax for the benefit of the State's General Revenue Fund, . . .. Any transfer made by a grantor, vendor, or donor, whether by deed, grant, sale, or gift, shall, unless shown to the contrary, be deemed to have been made in contemplation of death and subject to the same tax as herein provided, if such transfer is made within two (2) years prior to the death of the grantor, vendor, or donor, of a material part of his estate, or if the transfer made within such period is in the nature of a final distribution of property and without adequate valuable consideration."

Three opinions of this office have dealt with similar problems. Opinion O-4109 dealt with the following facts. The husband by will disposed of the entire community estate, setting up a trust for the surviving wife who was to have the use of the homestead and household furnishings and an annuity of $2400.00 per year for life. At the termination of the trust the corpus was to be distributed to seven named parties. The surviving wife elected to take under the will, and the opinion holds that although the wife's interest was not subject to tax by reason of being less than her community interest, Jones v. State, 5 S.W. (2d) 973, the remainder interests in the properties passed to the devisees by the will of the husband; that all property passing under a will absolutely or in trust is subject to tax by

reason of passing under a condition named in Article 7117, supra; and that "the inheritance tax . . . /was/ to be based upon the total value so passing to them and not based upon the value of only the one-half community interest of the testator in the estate." The writer of Opinion 0-4109 reached the conclusion that the entire remainder interest passed under the will by reason of authorities which hold that under the doctrine of election "he who accepts a benefit under a will must adopt the whole contents of the instrument, so far as it concerns him. . ." Phillee v. Holliday, 24 Tex. 38; and that title is derived from the Will, Kelly v. Kelly, 294 S.W. 518; Grange v. Kayser, 80 S.W. (2d) 1007. Opinion 0-191 is in accord in theory with Opinion 0-4109; and likewise took the view that when the surviving spouse elects to take under the husband's will which has disposed of the entire community estate, the inheritance taxes due by reason of the receipt of property by third parties must be computed on the basis of the full value of the property received.

Opinion 0-5557 involved the following facts. The husband's will created a testamentary trust disposing of the entire community estate. The surviving wife allowed her share of the community to pass according to her husband's will which provided that she receive 3/6 of the trust income for life and that a son and daughter or their children, on stated contingencies, receive the balance of the income in fixed amounts and the corpus of the trust ten years after their mother's death. The opinion holds that the wife's relinquishment of her share of the community was a "deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor"; and that therefore at her death an inheritance tax was due, "such tax . . . to be based upon the full amount of such interests arising from Mrs. Handley's one-half interest in the community property which forms the corpus of the trust." Thus only one-half of the other devisees' interests was regarded as having passed by the will of the husband, the other one-half passing on the death of the wife—a result which is clearly contra to the result reached in Opinions 0-4109 and 0-191, which held that as a result of the wife's election the whole community estate passed under the will. The writer further stated that it was not necessary to decide whether the will required an election in the technical sense of the term since it was certain "that by such relinquishment Mrs. Handley divested herself of her share in the community and placed such share under the testamentary trust created by her husband's will to be distributed in accordance with the terms thereof. Certain also is the fact that the relinquishment operated to bestow upon the ultimate beneficiaries of the trust one-half of whatever they acquire under such trust. Practically and legally the result is the same as if Mrs. Handley had at the time of her relinquishment created a separate and independent

trust with her share of the community, employing the same provisions that were contained in the trust established by her husband and designating the same beneficiaries."

The writer of this opinion reached the conclusion just stated by analogy to the decision in Bethea v. Sheppard, 143 S.W. (2d) 993, error refused. The facts in the Bethea case closely parallel the facts presented by your instant request. In the Bethea case Mr. and Mrs. Henke executed a joint and mutual will (lacking the express contractual provision of the T. G. Hendrick will) which provided, as did the Hendrick will, for the disposition of their entire community estate. As in the material parts of the Hendrick will, the will constituted the trust instrument and provided for certain bequests to become effective on the death of the husband, who was made trustee of the wife's interest in the event she predeceased him; but if the husband predeceased the wife, the entire community estate passed into the trust established by the will. Under the terms of the trust agreement, after her husband's death Mrs. Henke was to receive $40,000 per year (subject to increase on stated contingencies) for the remainder of her life. The daughter, Mrs. Bethea, likewise received an income from the trust during the life of her mother and for eight years following her death, at which time, again subject to stated contingencies, she was to receive the corpus of the trust. Mr. Henke did predecease his wife, and the will and trust instrument was probated as his will, and inheritance taxes were paid the State on his one-half of the community estate. When Mrs. Henke died, Mrs. Bethea contested the payment of inheritance taxes on her mother's one-half of the community estate which had gone into the trust. The Court held that "the net value of the corpus of the trust estate in suit was taxable upon the death of the grantor. . ." on the grounds that by its very terms the trust instrument "brings the instant case squarely within the statute, which . . . imposes the tax upon the passing of the property or interest therein when 'made or intended to take effect in possession or enjoyment after the death of the grantor.'" Now if the property had passed "by the will" of Mr. Henke which also established the trust, a fortiori, it could not have passed, as the Court held that it did, by "deed, act, sale or gift" from Mrs. Henke "made or intended to take effect in possession or enjoyment after" her death.

The fact that Mrs. Hendrick received no income from the trusts here involved can in no way operate to cause the transfer of her community interest to the trusts to pass by the will of Mr. Hendrick. In her case, no beneficial interest was reserved, nor was the transfer in any way deferred until her death. So we are of the opinion that it follows as a necessary corollary to the Bethea case that by the terms of the joint and mutual and contractual will, Mrs. Hendrick made what was, in effect, a transfer of her community interests to the trusts named therein and that said transfer took ef-

fect on the happening of the limiting condition precedent, to wit, Mr. Hendrick's death—not hers. So viewed, the transfer fails to come within the provision of Article 7117 relating to property passing by will.

We think that the foregoing fully substantiates this conclusion; but in view of the adverse affect on the State's revenues which will result from an overruling of Opinions 0-4109 and 0-191, we think it proper to support our conclusion by further discussion of relevant authorities.

We think that our holding is consistent with the holding of the Commission of Appeals in Jones v. State, 5 S.W. (2d) 973. In that case "the testator died leaving a community estate of the total value of $335,246.00. The will by its terms devised to the widow certain specific property of value approximately one-half of the total community property." The will specifically requested the wife to accept the bequests "in lieu of her community and dower interest in all other property." The surviving wife accepted the provisions. The Court said:

"Much stress has been laid by counsel for the state upon the doctrine of election under wills under which rule it is contended the surviving wife, having elected to take under the will, has done so, and will not be heard to dispute her action or to avoid the effect thereof; that by a proper application of the doctrine there has passed by the will the specific devises made. On the other hand, counsel for plaintiffs in error insist the doctrine does not control this case, because she has taken nothing under the will which she would not otherwise have been entitled to take, and therefore there is no equity to estop her.

"It cannot be said broadly that the surviving widow has not taken anything under the will which she would not otherwise have received, since she has received specific property under the will, whereas in the absence of the will she would have owned an undivided one-half interest in all the property. But this is of no moment in the consideration, for we have seen that by the terms of the statute before the tax is imposable the property must have passed by the will. We are of the opinion no property passed to the widow by the will in any event. It is undisputed that all of the estate possessed by the testator was community property. As matter of law, the wife was the equal owner in her own right of one-half of that estate.. . .

"Now if the surviving widow owned in her own right an undivided one-half interest in the community property of herself and husband, then she had title to that extent to such property, and, if the will of deceased did not pass any property to her, clearly she is not taxable. The will did not pass any property whatever to her, because it operated only as an effective partition of the community property after death. A partition deed or agreement does not pass title at all. Indeed it is not within the statute of frauds. It may as well be oral as in writing, all because a partition is not a conveyance of land. (Citations omitted)

"Under the undisputed facts, the surviving widow having received no more than her just share of the community property fully owned by her prior to the death of her husband, or if slightly in excess of her one-half, yet not as much as the minimum amount taxable under the act, $25,000, she has received no property through the operation of the will. The only effect of that instrument was to partition the community property between the surviving widow and the other beneficiaries; in other words, to make definite the particular portion of the community property owned by her, and not in anywise to affect, by increasing or diminishing, her estate. This is not the passing of property contemplated by the Inheritance Tax Act. To impose the tax under such circumstances would be to visit the tax upon the real owner whose real right to the property has not been affected one way or the other by the death of a co-owner. It is undisputed that the taxes have been paid upon that portion of the estate received by the others named as devisees who took the testator's one-half of the property."

Opinion O-4109 recognized that under the doctrine of Jones v. State, supra, no inheritance tax was due the State from the surviving wife since the value of the interest received was less than the value of her community interest; however, the remainder interests (partially composed of the wife's community) were regarded as passing under the will. We do not think that the holding in Jones v. State can be properly limited in its application to that part of the wife's interest which is received by the wife. In other words, we are of the opinion that if the husband's will did not "pass" her interest to her "by will" within the meaning of that phrase as used in Article 7117, V.C.S., it likewise does not "pass" her interest to others "by will." It is true that there are authorities which, in analogous cases dealing with the relinquishment of dower rights, have regarded prop-

erty so passing as subject to tax under similar statutes in other states. The opinion of the Court of Civil Appeals in Jones v. State, 290 S.W. 244, which was overruled by the Commission of Appeals, cited and followed numerous of these authorities all holding, in effect, that when the wife accepts under the husband's will a bequest in lieu of dower, the property so accepted is subject to inheritance tax. In rejecting the Court of Civil Appeals' opinion, the Commission of Appeals affirmatively rejected this line of authorities. Mr. Judson Falknor praised this decision in an article entitled "Liability of the Entire Community Estate for the Payment of State Inheritance Tax When Husband Undertakes to Dispose of Entire Community Estate by Will and Wife Elects to Take Under the Will." 5 Wash. Law Rev. 55. Mr. Falknor said:

> ". . . The language used by . . . the Supreme Court of Texas . . . is logical and in conformity with our fundamental notions of the community property system /i.e., the wife's actual legal ownership of her community interest as contradistinguished from the common law dower right which is generally viewed as an equitable interest or as an expectancy and which was involved in the cases relied upon by the Court of Civil Appeals' opinion which was overruled/ and a simple application of the fundamental conceptions demonstrates not only that the state, /referring to the State of Washington/ under our present Inheritance Tax Statute, is not entitled to a tax upon the wife's share in the community property, even where she elects to take under the will, but that an attempt on the part of the state to levy such a tax raises a serious constitutional question as to its right to do so.. . .

> . . . . .

> "Before the state can plausibly make such an attempt, a further voluntary and affirmative action on the part of the wife is required. In other words, she must agree and consent, either by a formal written acceptance of the will and relinquishment of her interest in the community property, or by virtue of an estoppel, that her half of the community property shall, along with the husband's half, be turned into the trust. But this amounts to nothing more than a conveyance by the wife to the trustee, after the death of the husband, of her interest in the community property. The fact that the entire community property

finds its way into the trust does not mean that the
trustee or the beneficiaries under the trust re-
ceive the property by will or inheritance; it sim-
ply means that one-half of the community property
goes to the trustee for the benefit of the named bene-
ficiaries by virtue of the will of the husband, and the
other half of the community property goes into the
trust because of the voluntary and, what clearly
seems to be, the legally affirmative act of the wife."

Thus, as we view the matter, Opinion 0-5557 reaches
the correct result, and even in cases in which the surviving
spouse takes affirmative action to relinquish his or her com-
munity share after the death of the spouse who has by will dis-
posed of the entire community estate, the share of the survivor
does not pass by the will of the deceased spouse within the mean-
ing of Article 7117. Opinions 0-4109 and 0-191 are therefore
overruled.

We think that the instant case in which the surviving
wife entered into the trust agreement prior to the death of the
husband is an even clearer case for the refutation of the view
that her community interest passed "by his will" within the
meaning of Article 7117. To lump the estate of the surviving
spouse with the estate of the deceased spouse and compute an
inheritance tax on the combined value is clearly contra to the
obvious purpose of the provision of the statute which imposes
a tax upon the receipt of property which has passed "by will,"
since it was obviously designed to tax the privilege of receiv-
ing property from the dead—not from the living.

Even though we have concurred with the theory sub-
mitted by the attorney for the executor, i.e., that only T. G.
Hendrick's one-half interest in the community is subject to tax
as passing by will, we differ as to the amount which passed from
T. G. Hendrick's interest to the Baptist Foundation as trustee on
which the taxes due are to be computed.

Your file shows that at the death of T. G. Hendrick the
value of Ida Hendrick's community was placed at $2,269,289.44.
However, it must be borne in mind that $500,000 of this amount
was specifically diverted into the trust established for her ben-
efit, and ultimately, on her death, for the benefit of the Hendrick
Home for Children at Abilene. To that extent, then, the ratio of
her contribution to the Baptist Foundation must be deemed to
have been reduced accordingly, and the amount passing by the
will to the Baptist Foundation from T. G. Hendrick's community
interest necessarily exceeds one-half of the sum bequeathed in
the same ratio. Specifically, the value of the amount which pass-

ed from T. G. Hendrick's estate should be determined by multiplying the amount of the taxable bequests by $\frac{2,269,289.44}{4,038,578.88}$.

Likewise, in this case we think that Mrs. Hendrick's affirmative acts in joining in and accepting the provisions of T. G. Hendrick's will disposing of the community estate, followed by her death within less than two years, come within the following provision of Article 7117, V.C.S.:

"... Any transfer made by a grantor, vendor, or donor, whether by deed, grant, sale, or gift, shall, unless shown to the contrary, be deemed to have been made in contemplation of death and subject to the same tax as herein provided, if such transfer is made within two (2) years prior to the death of the grantor, vendor, or donor, of a material part of his estate, or if the transfer made within such period is in the nature of a final distribution of property and without adequate valuable consideration."

Therefore, on her death an inheritance tax became due and owing the State, and should be computed on the basis of the amount of the gift of her community interest; specifically, that amount should be determined by multiplying the value of the taxable bequests by $\frac{1,769,289.44}{4,038,578.88}$. Even though the $500,000 transfer from her property to the trust established for her benefit is also clearly within Article 7117 as a transfer "by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor," Bethea v. Sheppard, 143 S.W. (2d) 997, error refused, there is, of course, no tax due by reason of the fact that the ultimate beneficiary, the Hendrick Home for Children, is exempt by virtue of Article 7122, V.C.S.

We trust that the foregoing has answered your question and are returning your file herewith.

## SUMMARY

Where community estate was completely disposed of at death of husband by joint will and trust instrument, only the value of the amounts which passed from his community one-half should be used as a basis for computing the inheritance taxes due at his death. Under facts stated, inheritance taxes also became due at the wife's death, which occurred less than two years after the husband's death; and

the basis for computing the taxes due at her death should be the value of the amounts which had passed from her one-half of the community at the death of the husband to the beneficiaries named in the joint will and trust instrument. Opinions 0-191 and 0-4109 are overruled to the extent of any conflict with this opinion. Bethea v. Sheppard, 143 S.W. (2d) 997, error refused. Article 7117, V.C.S.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Marietta Creel*

Mrs. Marietta Creel
Assistant

MC/JCP
ENC. (1)

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL