**LAW AND EQUITY COURT OF THE CITY OF RICHMOND**

C. C. Leasing Corp.

v.

City of Richmond

March 15, 1973

Case No. A-8285

By JUDGE ALEX H. SANDS, JR.

This is a petition filed by plaintiff company against the City of Richmond seeking the correction of an alleged erroneous assessment of taxes and refund of such taxes paid pursuant thereto for the years 1970 and 1971. Petitioner contends that it is not "doing business" in the City of Richmond in any manner, whatsoever so as to be subject to a local business license tax, while the City contends that the "taxable event" involved occurred in the City and is, therefore, taxable by the locality.

The determination of this issue depends largely upon the factual situation, as to which there is really very little dispute.

Petitioner, C. C. Leasing Corporation (Petitioner) is a Delaware corporation with its principal office in Baltimore, Maryland. The evidence conclusively establishes that Petitioner maintains no office in Virginia nor any agent or employee working in Virginia. The activity over which this contest arises is the renting by Petitioner to Richmond Engineering Corporation (RECO) a domestic corporation having its principal office located in the City of Richmond of a certain piece of IBM equipment. The leasing arrangement in question was negotiated and handled in the following manner. Initially, RECO was contacted by an outfit known as Financial Leasing Corporation and

its signature secured upon a form of lease agreement. (There appears to be no testimony as to who prepared the form of the lease agreement, but from the form of plaintiff's Exhibit 3, it appears probable that the form was prepared by Petitioner.) It is undisputed that Financial Leasing Corp. was neither an agent or employee of Petitioner, nor was it in any way affiliated or connected with Petitioner. Financial then submitted the contract to Petitioner some three weeks later and was executed by Petitioner. (It is undisputed that up to this point Petitioner was under no obligation to execute the agreement and upon occasion in other instances not involving RECO, had refused to execute contracts when presented. In such instances, Financial received no compensation for its efforts. Tr. 10.) Financial received a commission for Procuring the contract to be paid from the rents coming to Petitioner under the lease agreement. At this juncture, Petitioner purchased the equipment from IBM upon the basis of a purchase order prepared by RECO specifying the exact equipment desired. IBM shipped the unit direct to RECO, who was responsible for the shipment. Title to the equipment passed to Petitioner upon acceptance of the equipment by RECO. It was installed either by RECO or IBM and maintenance thereafter was the sole responsibility of RECO. Rental payments under the lease were due and payable in Baltimore and were actually made by RECO direct to Petitioner's bank in New York. Upon termination of the leasehold period, Petitioner could require RECO to return the equipment, at RECO's risk, to a designated pickup point outside of Virginia or at its option, Petitioner could sell the equipment to some third party in which event, RECO would deliver to such third party.

Upon these facts, City imposed a business license tax against Petitioner based upon the leasing agreement, such tax being imposed pursuant to § 37-208 of the Richmond City Code, City taking the position that the "taxable event" involved, *i.e.*, the leasing of the equipment, or the act which generated the income to Petitioner, took place in Richmond.

It is Petitioner's contention, on the other hand, that its leasing operation could under no stretch of the imagination be construed as "doing business" in Richmond

in such manner as to subject it to the proper imposition of a business license tax against it by City.

From the above review of the facts surrounding the transaction under review, it is apparent that Petitioner had no place of business located in Richmond, had no agents or representatives operating for or on its behalf in Richmond, did not solicit business in Richmond and that if it was chargeable with "doing business" in the City at all, it was by virtue of holding the naked legal title to a piece of equipment which was physically located in Richmond as an incident of a leasing agreement executed in another state. Financial Leasing Corp., by soliciting business in the City, might be successfully held to have been "doing business" in the City, but the uncontradicted testimony is that Leasing was an independent contractor and, as heretofore stated, in no way connected with Petitioner.

If City's position is, as it appears to be, that the mere naked ownership of property that is under lease to a Richmond resident, without more, renders the nonresident owner liable to the imposition of a business license tax based upon the fact of ownership, its position is untenable.

Defendant urges that cases relied upon by plaintiff, *General Talking Picture Corp.* v. *Shea*, (Ark.) 49 S.W.2d 359; *Hayden* v. *Dallas County*, (Tex.) 143 S.W.2d 990; *Organ* v. *Real Art Pictures*, (Mo.) 374 S.W.2d 535; *United Shoe Repair etc. Co.* v. *Carney*, (W. Va.) 179 S.E. 813, which deal with "presence" for purpose of service of process and for purposes of determining whether the act in question is one involving interstate or intrastate status are not applicable since we are concerned only with tax status. While the issue to be resolved in these cases was different from that in the case at bar, the test which was dispositive of the issues in those cases was identical to that which will be dispositive of the issue in the case at bar, *i.e.*, whether the party against whom recovery is sought to be had was "doing business" in the particular locality in question.

Section 58-266.6 of the Code of Virginia sets out in unequivocal terms the considerations which fix the situs for local business taxes. There are three categories, (1) where the person or corporation upon whom the tax

is sought to be imposed has a definite place of business or maintains an office in the locality, (2) where, though not maintaining an office or place of business in the locality, the person or corporation engages in a regularly operating business in the locality though the office is maintained elsewhere and (3) where though neither maintaining a regularly operating business nor a business office in the area the *essential acts* constituting the doing of such business take place in the locality.

The only category under which Petitioner's leasing operation could fall would be number 3, and whether this category would cover depends upon whether the essential acts constituting the conduct of Petitioner's leasing business took place in the City of Richmond. The uncontradicted evidence is that the only fact which could constitute Petitioner's "doing business" in the City of Richmond is the physical location in the City of a piece of equipment to which Petitioner held legal title. As to the leasing operation itself, the contract of lease was not solicited by Petitioner but was presented to it for acceptance or rejection in Baltimore. Petitioner participated in neither the delivery, installation nor maintenance of the equipment nor in its disposal at the termination of the leasehold period other than to exercise the option of selling at that time, delivery to a purchaser to be made by RECO, or in the alternative to take physical possession of the equipment which would be delivered by RECO to some designated point for pickup by Petitioner.

The authorities relied upon by City, *Dunbar-Stanley Studios* v. *Alabama*, 393 U.S. 537, 21 L. Ed. 2d 759 (1969); *Alaska* v. *Arctic Maid*, 366 U.S. 199, 6 L. Ed. 2d 227 (1961); *Stork Diaper Service* v. *Richmond*, 210 Va. 705 (1970), are not apposite. In *Alaska* the issue was whether a "Freezer Ship" which operated just outside of the Alaska territorial waters but which procured all of the fish which it processed and sold *inside* the Alaska waters either through means of its own "catcher" boats operating therein or through purchase from other "catcher" boats, was subject to a license tax imposed by Alaska upon its operation. The court, reversing the Court of Appeals, held that since the catching of the fish, which was the basic activity of the entire operation, was inside Alaskan waters, that the "Freezer Ship" was "doing business" in Alaska. In

*Dunbar*, upon the basis that photographers in the employ of defendant company, a company non-domesticated in Alabama, had actually come into Alabama, set up a temporary studio therein from which they operated, it was held that the photographers were engaged in an essentially local activity and that, therefore, the defendant company was subject to the assessment of a transient photographer's tax imposed by Alabama. In *Stork* the defendant's principal place of business was the City of Richmond, clearly falling under category (1) *supra*, the only question being whether City could tax business which had taxable incidents both inside and outside the City.

For a comparison of situations which constitute the "doing of business" in a particular locality by an outside firm and whose which do not, compare *International Shoe Company* v. *Washington*, 326 U.S. 310, 90 L. Ed. 95 (1945), and *Hanson* v. *Denkla*, 357 U.S. 235, 2 L. Ed. 2d 1283 (1958).

For the above reasons, it is held that the "taxable event" in the case at bar was the operating of an equipment leasing business and that the mere physical location of a piece of equipment in the City of Richmond, pursuant to the terms of such lease, standing alone, without any other act incident to the negotiating or performance of the terms of the lease agreement being performed by Petitioner in the City of Richmond, does not subject Petitioner to the imposition of a license tax based upon the rental generated by the lease of the equipment in question.