STATE of Wyoming, Wyoming State Board of Equalization, Wyoming State Tax Commission, Nancy Freudenthal, Marvin Applequist, and Charles Brown, in their official capacities as members of the State Tax Commission and State Board of Equalization of the State of Wyoming, Appellants (Defendants),

v.

UNION PACIFIC RAILROAD COMPANY, a Utah corporation, Appellee (Plaintiff).

No. 90–280.

Supreme Court of Wyoming.

Jan. 16, 1992.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., for appellants.

Dennis W. Lancaster, Phillips, Lancaster & Thomas, P.C., Evanston, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

The question of law presented in this case is whether certain heavy equipment owned by the Union Pacific Railroad Company (UPRR) comes within the definition of "mobile machinery" found in Section 31–2–601, W.S.1977 (June 1989 Repl.). That statute provides:

"(a) As used in this act:

"(i) 'Mobile machinery' means heavy equipment, except shop or hand tools or attachments, which is self-propelled, towed or hauled and used primarily in construction and maintenance of roads, bridges, ditches, buildings or land reclamation; * * *."

In a declaratory judgment action, the UPRR took the position that its heavy equipment was not "used primarily in construction and maintenance of roads, bridges, ditches, buildings or land reclamation" and, for that reason, it was not subject to the registration fees provided in Sections 31–2–603 to –605, W.S.1977 (June 1989 Repl.).

The district court entered a summary judgment in favor of the UPRR, holding its heavy equipment which was not "used primarily in construction and maintenance of roads, bridges, ditches, buildings or land reclamation" could not be subjected to the registration fees and ruling that actual use of the specific equipment was the controlling factor. A collateral issue then developed with respect to whether, for purposes of summary judgment, the UPRR made an adequate record demonstrating the fact that its equipment was not used in the manner provided by the statute. On this issue, the district court also ruled in favor of the UPRR and entered summary judgment for it. We are in accord with the interpretation of the statute by the district court, and we agree that, for the purpose of the declaratory judgment action, the record was adequate to permit the trial court to resolve the issue of law presented. The summary judgment entered by the trial court is affirmed.

The Wyoming State Board of Equalization (Board) and the other appellants offer this statement of the issue in their brief:

"Did the district court err in granting summary judgment where appellee failed to produce the basic facts regarding the actual use of its mobile equipment and admitted that it could not produce such basic facts?"

In its brief, the UPRR states the issues in this way:

"A. Whether the district court's decision awarding summary judgment to the Union Pacific Railroad Company is supported by the facts and the record.

"B. Whether the district court's decision awarding summary judgment to the Union Pacific Railroad Company is supported by the law.

"C. Whether the underlying policy and fundamental principles which dictate the relationship of the legislature and the judiciary vis-'a-vis administrative agencies support the district court's decision."

The legislature adopted Chapter 216 of the Session Laws of 1989, which became codified as Sections 31–2–601 to –606. The essence of the act was that mobile machinery should not be operated in Wyoming unless it was registered pursuant to the act. The registration provisions essentially require an application to a county treasurer and the payment of a registration fee in lieu of property taxes. The fee for registration is "computed by multiplying the statewide average county, school district and state property tax mill levy for the preceding year as computed by the state tax commission times the applicable assessment factor times the valuation of the mobile machinery." Section 31–2–603(e). Alternatively, a temporary registration may be obtained for sixty days based upon one-sixth of the annual fee. A special provision relates to the registration of rental or leased machinery, and mobile machinery listed on a property tax assessment roll is exempt from the registration requirement. In any of these events, however, a fee of $3 is charged so that a sticker can be issued for the mobile machinery.

In Section 31–2–602, a specific list of exemptions from the statute is set forth, but that list does not include the equipment used by the UPRR. The Board contends this manifests a legislative intention that the equipment of the UPRR is subject to registration under the act. The UPRR contends the position asserted by the Board begs the question that the UPRR argued in the trial court, as well as in this court,

which is whether its equipment ever comes within the reach of the registration act. The UPRR contends that, unless the heavy equipment is actually used in the "maintenance of roads, bridges, ditches, buildings or land reclamation * * *," it is not subject to registration under the act. The trial court accepted this construction of the statute, as argued by the UPRR, and ruled that the equipment of the UPRR did not fall within the definition of mobile machinery and was not subject to registration. The trial court then "restrained and permanently enjoined [the Board and its agents] from collecting any fees, assessments, registration fees or any other taxes or fees and/or from detaining [the UPRR] and/or their agents bringing equipment into the Wyoming ports of entry for registration or assessments under W.S. § 31–2–601 et seq." That injunction was made permanent.

 We agree with the decision of the trial court that the statute in question did not reach to the heavy equipment used by the UPRR. In construing a taxing or revenue statute, courts should attempt to ascertain and give effect to the intention of the legislature, and that intention is to be gathered from a consideration of every word in the statute so as to make it harmonious and reasonable in its operation. *Walgreen Co. v. State Board of Equalization*, 62 Wyo. 288, 166 P.2d 960, *reh'g denied* 62 Wyo. 288, 169 P.2d 76 (1946). To the extent that the statute may be considered ambiguous, we must apply the rule of strict construction and resolve the ambiguity in favor of UPRR. *Belco Petroleum Corp. v. State Board of Equalization*, 587 P.2d 204 (Wyo.1978); *Mealey v. City of Laramie*, 472 P.2d 787 (Wyo.1970); *Luman v. Resor*, 406 P.2d 527 (Wyo.1965). *See BHP Petroleum Co., Inc. v. State*, 784 P.2d 621 (Wyo.1989). With respect to the issue of statutory construction, we agree with the trial court that the language of the statute is equally susceptible to the construction that it alludes to mobile machinery actually used for the purposes stated and to the construction that it describes mobile machinery which can only potentially be used for the purposes stated.

In this regard, we note the Board admitted in the trial court that the purpose of this taxing statute is to equalize the tax burden by requiring out-of-state construction companies coming to Wyoming to work on construction projects to pay an amount that is roughly equivalent to the tax burden imposed on in-state construction firms. The concern of the legislature was that foreign construction companies could bid on a project in Wyoming and, to complete the project, use heavy equipment which was not subject to the Wyoming *ad valorem* property tax. On the other hand, domestic construction companies which bid on the same projects would have to include in their costs the *ad valorem* property tax upon their equipment. In its presentation to the district court, the Board conceded that the legislature essentially was attempting to equalize this tax burden upon certain types of heavy equipment, *i.e.*, mobile machinery used primarily in the construction and maintenance of roads, bridges, ditches, buildings and land reclamation. This concession by the Board, in effect, is that the purpose of the registration fee was not to articulate a tax generic in nature, but was aimed at equipment which would actually be used in Wyoming on construction projects such as those contemplated by the legislature. It follows that, if heavy equipment defined as mobile machinery in the statute is not used primarily for such a purpose, the tax may not be imposed.

■ Given this construction of the statute, the collateral question is whether the record satisfactorily demonstrates that the factual posture of the mobile machinery owned by the UPRR precludes the imposition of the registration fee. A summary judgment is to be affirmed on appeal only if we are persuaded there are no genuine issues relating to any material fact and the prevailing party is entitled to judgment as a matter of law. *Hayes v. American National Bank of Powell*, 784 P.2d 599 (Wyo. 1989). Furthermore, we must examine those facts which were contemplated by the district court in the light most favorable to the party opposing the motion for summary judgment, in this instance, the Board.

Through affidavits, the UPRR demonstrated it had paid the administrative fee required by the statute for several items of heavy equipment. The administrative fee is only $3 and, because the UPRR's equipment appears on the county tax rolls, the only statutory requirement of the UPRR was that it obtain the sticker. Section 31-2-601(c). While the imposition of the fee is a minimal burden, the application of the statute was burdensome to the UPRR because it hindered maintenance operations. The equipment the UPRR wanted to use in Wyoming might be set aside for as much as several hours while the fee was paid and the paperwork performed by the Department of Revenue and Taxation at a port of entry. In addition, the UPRR asserted it had paid the fee for such items as rail saws, a ballast regulator, a front end loader, a compressor, an auto spiker, a bulldozer, a grader, and a truck crane. UPRR further asserted it had paid administrative fees in other instances, but it was not able to produce specific records of those instances. The initial affidavits submitted by the UPRR were quite conclusive in nature and stated only that the equipment of the UPRR was not used "primarily in the construction and maintenance of roads, bridges, ditches, buildings and land reclamation." In a subsequent affidavit, the UPRR provided this information:

"5. That the following equipment is representative of the type of equipment which has been halted at the ports of entry in Wyoming and has been assessed by the State of Wyoming: ditch diggers, speed swings, spike pullers, rail saws, adzers, cribbers, bolt machines, tie inserters, front end loaders, bull dozers and back hoes.

"6. That the manner in which the equipment set forth above in paragraph 5 is used including that used in Uinta County, Wyoming, is used exclusively for work on the Union Pacific Railroad Company's tracks and other appurtenances and associated facilities and is not available for contract or hire and is not used primarily in the construction and mainte-

nance of roads, bridges, ditches, buildings or land reclamation. Such equipment is primarily used by Union Pacific Railroad Company in Wyoming as follows:

"1. *Ditch Diggers*—used to bury signal cable and water pipes.

"2. *Speed Swings*—used to handle rail and heavy track components too heavy to be lifted by manpower.

"3. *Spike Pullers*—used to pull spikes when repairing the track structure.

"4. *Rail Saws*—used to cut rail.

"5. *Adzers*—used to dress the "plate seat" on railroad ties.

"6. *Cribbers*—used to clean rock from between ties.

"7. *Bolt Machines*—used to remove or install track bolts at the end of rails.

"8. *Tie Inserters*—used to install new ties under the track structure.

"9. *Front End Loaders*—used for various jobs to maintain track.

"10. *Bull Dozers*—used to build subgrade for track structures and snow removal. Also for clearing derailments and restoring track structure.

"11. *Back Hoes*—used for trenching for cable and water lines.

"7. The equipment set forth above in Paragraph 6 represents the majority of all mobile equipment, as this term is used in the report filed by Union Pacific Railroad Company to the State of Wyoming, Department of Revenue and Taxation, used in the State of Wyoming by Union Pacific Railroad Company.

"8. That the remaining pieces of equipment of Union Pacific Railroad Company's mobile equipment, as this term is used in the report filed by Union Pacific Railroad Company to the State of Wyoming, Department of Revenue and Taxation, used in the State of Wyoming by Union Pacific Railroad Company, which does not fall within the above types of equipment set forth in paragraph 6 is also used exclusively for work on the Union Pacific Railroad Company's tracks and other appurtenances and associated facilities for purposes similar to those

related to the uses set forth above in paragraph 6. There are approximately 15,000 pieces of equipment used nationwide which do not fit into a major category but are nonetheless vital to track maintenance and structure. None of these listed pieces of equipment are used primarily in the construction and maintenance of roads, bridges, ditches, buildings or land reclamation."

The Board argues that this affidavit does not comport with the requirements of Rule 56, W.R.C.P., because it was not based upon personal knowledge; it contained conclusional and self-serving statements; and it included conclusions of law. We do not agree with the position taken by the Board. The affiant asserts personal knowledge of the facts related and, while some of its contents are conclusional, the factual and legal conclusions it states flow from other facts that are contained in the affidavit. We note the affidavit was filed in the context of a declaratory judgment action, rather than in a case seeking recovery of fees that were paid. Consequently, we conclude under these circumstances the affidavit sufficiently complied with Rule 56 so that the district court could act on the motion for summary judgment.

The Board initiated the need for declaratory judgment by requiring the UPRR to purchase the mobile machinery stickers. The UPRR then demonstrated by affidavit that its machinery is not primarily used in the manner contemplated by the statute. For purposes of a declaratory judgment, in the absence of some other record information, such as counter affidavits, the UPRR established a *prima facie* case that the tax should not be applied to its mobile machinery. At that juncture, the burden shifted to the Board to demonstrate a material issue of fact, and it failed to do so. *Estate of Short*, 785 P.2d 1167 (Wyo.1990). The general burden of establishing taxability is assigned to the taxing authority. *City of Cheyenne v. Board of County Commissioners of Laramie County*, 484 P.2d 706 (Wyo.1971). The Board asserted taxability to the extent that it imposed the $3 administrative fee on the UPRR, but once the

UPRR, by its affidavits, established the *prima facie* case, the Board was required to do more. Based on the record before us, the UPRR's heavy equipment is not subject to the statutory requirements unless it is actually "used primarily in the construction and maintenance of roads, bridges, ditches, buildings or land reclamation."

The summary judgment entered by the district court is affirmed.

URBIGKIT, Chief Justice, dissenting.

I would not accord to the Union Pacific Railroad, which has major industrial involvement in Wyoming, a different taxpayer responsibility than is impressed upon the out-of-state road construction contractors or domestic enterprises which build and maintain roads, bridges, ditches, and buildings. Mobile construction machinery, when owned and used by the Union Pacific Railroad for construction and maintenance, is essentially no different, except perhaps for a few specialty items like tie installers, than is that same kind of equipment which is used to build Wyoming's alternate public transportation system—our roads and highways. Railroad services are used to some extent in highway and industrial building construction, and use of the public highway system is inescapable and indispensable for the railroad to totally function.

If the legislature wants to try to avoid the special legislation constraints of Wyo. Const. art. 3, § 27, *May v. City of Laramie,* 58 Wyo. 240, 131 P.2d 300 (1942), I would leave the effort to them to provide specificity in statutory provisions without presumptive construction to deny taxpayer responsibility to any select or individual entities. The legislature did not, and I do not construe into what was done, a probable and constitutional result to achieve another special interest tax exemption.

I would find the affidavit, which was filed to avoid equal taxation responsibility on this industry, to be neither sufficient nor satisfying as a matter of fact or a question of law. *See Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986). The construction and maintenance of roads, bridges, ditches, buildings and land reclamation is not a character of activity which excludes the usage made of this construction equipment by this particular protesting taxpayer. *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214 (Wyo.1991).

Consequently, I am dissatisfied in seeking equality of taxation, Wyo. Const. art. 15, § 11; *Rocky Mountain Oil and Gas Ass'n v. State Bd. of Equalization,* 749 P.2d 221 (Wyo.1987); uniformity of statutory application, Wyo. Const. art. 1, § 34; *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980); *Washakie County School Dist. No. One v. Herschler,* 606 P.2d 310 (Wyo.), *cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980); and avoidance of unconstitutional aid to any corporation, Wyo. Const. art. 16, § 6; *Board of County Com'rs of Carbon County v. Union Pac. R. Co.,* 25 Wyo. 463, 171 P. 668 (1918)— namely a railroad—Wyo. Const. art. 3, § 39, with either the propriety of the tax absolution by summary judgment or the legal persuasiveness of the affidavit which was used here to achieve that result.

Equality and equivalency, to me, mean that every front-end loader used by private concerns for Wyoming construction should be subjected to the same tax assessment process and payment responsibility. Consequently, from this decision adjudicating a differentiated taxation result without any apparent logical justification in fact, statutory construction, or constitutional application, I respectfully dissent.