BARCON, INC. a Wyoming Corporation, Appellant (Petitioner),

v.

The WYOMING STATE BOARD OF EQUALIZATION, Appellee (Defendant).

No. 92–133.

Supreme Court of Wyoming.

Dec. 31, 1992.

Tracy J. Copenhaver of Copenhaver, Kath & Kitchen, Powell, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard and Clinton D. Beaver, Sr. Asst. Attys. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT and GOLDEN, JJ.

URBIGKIT, Justice.

In this appeal, we are asked to determine whether Wyoming's use tax imposes an excise tax on persons purchasing used property out-of-state from a non-vendor. We affirm the decision of the district court which affirmed the Wyoming State Board of Equalization decision that the deficiency assessment issued by the Wyoming Department of Revenue and Taxation was in accord with specifically amended provisions of Wyoming law. However, because of ambiguity in the statutory language, we must construe the language of the provisions of Wyoming's Use Tax Act of 1937, Wyo.Stat. §§ 39-6-501 through 39-6-518 (1990 & Supp.1992) (hereinafter Use Tax Act or use tax) to effectuate the legislative intent.

## I.

## ISSUES

Appellant states a single issue for our consideration:

I. Was it error for the District Court for the Fourth Judicial District to determine that W.S. § 39-6-504(b) (1977) which in relevant part provides, "Persons storing, using or consuming tangible personal property are liable for the tax imposed by this article[ ]" actually imposes a tax rather than indicates who is liable for the tax imposed by the Use Tax law and did the District Court therefore err in concluding that the Use Tax Act of 1937 imposes a Use Tax on persons acquiring used property out of state from persons other than vendors?

On behalf of appellee, the Attorney General's office rephrases:

Does W.S. 39-6-504 impose[ ] Use Tax on the sale of tangible personal property for first use in Wyoming from an out-of-state seller, regardless of whether the seller was a vendor as defined at W.S. 39-6-502(a)(viii)?

## II.

### FACTS

Appellant, Barcon, Inc. (Barcon), is a Wyoming corporation engaged in the heavy construction industry with its principal place of business in Sheridan, Wyoming. During December of 1988, Barcon purchased some earth-moving and trenching equipment from Barnard Construction Co., Inc. (Barnard), a Montana construction company with offices in Bozeman, Montana.[1] It is undisputed that Barnard is not in the business of selling construction equipment. The equipment Barnard sold was used when resold as surplus in company operations.

Wyoming's Department of Audit, Excise Tax Division, discovered that Barcon had not paid a use tax on the equipment purchase. The Department of Revenue and Taxation issued a Deficiency Assessment, Notice and Demand, requesting payment of a sales and use tax deficiency of $66,411.97 for the equipment and various other items not at issue.[2] Barcon was also assessed a ten percent penalty of $6,641.20 along with interest at one percent per month aggregating to $21,213.73, making the total tax assessment $94,266.90.

Barcon paid the tax under protest and appealed the deficiency assessment to the Wyoming State Board of Equalization (Board of Equalization or Board). Barcon argued that the use tax was not intended to apply to "isolated, out-of-state purchases by Wyoming residents of used equipment or property from a person not in the business of selling that property."[3] The Board concluded, as a matter of law, that the term "vendor" was used in the Use Tax Act to describe a legislative intent to limit the administrative burdens of licensing, collecting, reporting and paying the use tax to enterprises with a nexus or clear connection to Wyoming which were actually engaged in the business of selling products or services. The Board determined, however, that the legislative omission of the term "vendor" from some provisions of the Use Tax Act demonstrated an intent to tax transactions, such as Barcon's, by making the purchaser individually liable.

The Board acknowledged that Barcon had relied on a "reasonable interpretation of poorly worded use tax statutes" in making its decisions. As a result, the Board determined the penalty should not be imposed. The interest assessment was retained.

---

**1.** The specific items purchased included the following:

| Item | Purchase Price | Use Tax Assessed |
| --- | --- | --- |
| Henry's Pipelayer | $ 286,798.00 | $ 8,603.94 |
| Capital Trencher | $ 420,200.00 | $12,606.00 |
| Cleveland Trencher | $ 44,917.00 | $ 1,347.51 |
| D–6 Dozer | $ 60,959.00 | $ 1,828.77 |
| 14 G Cat Grader | $ 61,000.00 | $ 1,830.00 |
| 225 Cat Excavator | $ 133,250.00 | $ 3,997.50 |
| 235 Cat Excavator | $ 151,011.00 | $ 4,530.33 |
| 235 Cat Excavator | $ 142,050.00 | $ 4,261.50 |
| 235M ME Cat Excavator | $ 265,000.00 | $ 7,950.00 |
| 950 B Cat Loader | $ 72,500.00 | $ 2,175.00 |
| 950 B Cat Loader | $ 72,500.00 | $ 2,175.00 |
| 950 B Cat Loader | $ 64,000.00 | $ 1,920.00 |
| 966 C Cat Loader | $ 36,200.00 | $ 1,086.00 |
| 966 D Cat Loader | $ 85,000.00 | $ 2,550.00 |
| 966 D Cat Loader | $ 90,000.00 | $ 2,700.00 |
| Total | $1,985,385.00 | $59,561.55 |

The Wyoming State Board of Equalization, in its "Findings of Fact Conclusions of Law Order," states Barcon owed a deficiency assessment for the equipment in the amount of $59,561.55.

**2.** Barcon contested only the portion of the deficiency, penalty and interest assessed to the equipment purchase.

**3.** At Barcon's request, this matter was submitted to the Board of Equalization by briefing and

Barcon sought judicial review of the Board of Equalization's decision in the District Court for the Fourth Judicial District, Sheridan County, Wyoming. The district court found a provision of the Use Tax Act, Wyo.Stat. § 39–6–504(b), imposed, in clear and unambiguous terms, tax liability on Barcon without regard to the seller's status. The district court affirmed the Board of Equalization's decision. A timely application for review in this court followed.

## III.

### STANDARDS OF REVIEW

The right to judicial review of administrative decisions of the Board of Equalization is granted by Wyo.Stat. § 39–1–306 (1990).[4] The Wyoming Administrative Procedures Act, Wyo.Stat. §§ 16–3–101 through 16–3–115 (1990 & Supp.1992), controls the scope of review.

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo.Stat. § 16–3–114(c) (1990). *See Exxon Corp. v. Wyoming State Bd. of Equalization*, 783 P.2d 685, 687 (Wyo.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990) (collecting cases). No special deference is accorded to the district court's decision. *Burlington Northern R. Co. v. Wyoming State Bd. of Equalization*, 820 P.2d 993, 995 (Wyo.1991); *Union Pacific R. Co. v. Wyoming State Bd. of Equalization*, 802 P.2d 856, 859 (Wyo. 1990).

This court has identified three possible outcomes in reviewing an agency conclusion of law:

The agency may correctly apply their findings of fact to the correct rule of law. * * * In such case, the agency's conclusions are affirmed. But the agency could apply their findings of fact to the wrong rule of law or they could incorrectly apply their findings of fact to a correct rule of law. * * * In either case, we correct an agency conclusion to ensure accordance with law. * * * Our standard of review for any conclusion of law is straightforward. If the conclusion of law is in accordance with law, it is affirmed * * *; if it is not, it is to be corrected * * *.

*Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871 (Wyo.1990).

■ The question of law presented by this appeal requires this court to enforce

---

affidavit. No hearing was held. Wyo.Stat. § 16–3–107 (1990).

**4.** Wyo.Stat. § 39–1–306 provides:

Any person including the state of Wyoming aggrieved by any order issued by the board, or any county board of equalization whose decision has been reversed or modified by the state board of equalization, may appeal the decision of the board to the district court of

the county in which the property or some part thereof is situated.

Supreme Court review of district court appeals is granted by Wyo.Stat. § 16–3–115 (1990), which states:

An aggrieved party may obtain a review of any final judgment of the district court under this act by appeal to the supreme court. The appeal shall be taken as in other civil cases.

the statutory language as understood by the Board of Equalization or construe its meaning to determine if Barcon's argument is determinative. If the language of the statute is plain and unambiguous, conveying a clear and definite meaning, this court does not resort to rules of statutory construction. *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834, 837 (Wyo.1991). When the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to legislative purpose or mandate, this court must resort to additional construction. *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 219 (Wyo.1991). A statute must be considered ambiguous if a word or phrase is susceptible to more than one meaning. *State Bd. of Equalization v. Tenneco Oil Co.*, 694 P.2d 97, 99 (Wyo.1985).

Legislative intent is ascertained from the language of the statute viewed in light of its object and purpose. *Belle Fourche Pipeline Co. v. State*, 766 P.2d 537, 542 (Wyo.1988). The power to tax is a legislative power which includes the power to say what shall be taxed, who pays it and what the tax shall be. *Rocky Mountain Oil and Gas Ass'n v. State Bd. of Equalization*, 749 P.2d 221, 240 (Wyo.1987). "In construing a taxing or revenue statute, courts should attempt to ascertain and give effect to the intention of the legislature, and that intention is to be gathered from a consideration of every word in the statute so as to make it harmonious and reasonable in its operation." *State v. Union Pacific R. Co.*, 823 P.2d 539, 541 (Wyo.1992). Every subsection of the statute must be considered in the context of all others to ascertain the meaning of the whole. *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 816 (Wyo.1992). We assume that the legislature's amendment of a statute indicated some change in existing law was intended. *Wetering v. Eisele*, 682 P.2d 1055, 1061 (Wyo.1984).

## IV.

## DISCUSSION

A review of the arguments presented by the Board of Equalization and Bar-

con provides a useful measure of the susceptibility of the Use Tax Act to multiple, viable interpretations. Both sides agree that the use tax is imposed by Wyo.Stat. § 39–6–504 (hereinafter § 504) which provides, in relevant part:

(a) Except as otherwise provided, there is levied and shall be paid by purchaser an excise tax of three percent (3%) upon sales in Wyoming. The vendor shall collect the tax and give the purchaser a receipt therefor displaying the tax paid separately.

(b) Persons storing, using or consuming tangible personal property are liable for the tax imposed by this article. The liability is not extinguished until the tax has been paid to the state but a receipt given to the person by a registered vendor in accordance with subsection (a) of this section is sufficient to relieve the purchaser from further liability.

(c) Tangible personal property sold by any person for delivery in this state is deemed sold for storage, use or consumption herein and is subject to the tax imposed by this article unless the person selling the property has received from the purchaser a signed certificate stating the property was purchased for resale and showing his name and address.

The Board of Equalization, initially, argues that the Use Tax Act is unambiguous because § 504(b) imposes a tax liability on the purchaser of the property while § 504(c) independently imposes tax liability on the property purchased. In the alternative, the Board of Equalization asserts if the statute is ambiguous, the legislative intent is revealed by reading § 504(a) and (c) together to disclose an intent to impose use tax on goods "sold by any person." The "vendor" language in § 504(a), according to the Board, is merely stating a collection mechanism. The Board contends that to maintain the complementary nature of the Use Tax Act and the Selective Sales Tax Act of 1937, Wyo.Stat. §§ 39–6–401 through 39–6–417 (1990 & Supp.1992) (hereinafter Sales Tax Act or sales tax), the use

tax must reach all sales of tangible personal property purchased out-of-state and brought into this state for consumption.

Barcon partially agrees with the Board of Equalization. Barcon admits that § 504(a) imposes a use tax, but Barcon reads that subsection as limiting the imposition of the tax to those sales occurring in Wyoming. Barcon contends the only provision of the Use Tax Act which imposes a tax on tangible personal property sold outside the state of Wyoming is § 504(c). However, Barcon says the equipment purchase it made in Montana does not qualify as a "sale" under the terms of § 504(c) because the sale was not made by a "vendor." Barcon defends its evaluation by reference to the definitions provided in the Use Tax Act:

(a) As used in this article:

(i) "Retail sale" means the sale of tangible personal property to a person for storage, use or consumption and not for subsequent resale;

(ii) "Sale" means the transfer of title or possession of tangible personal property from a vendor for a consideration for storage, use or other consumption in Wyoming * * *

* * * * * *

(viii) "Vendor" means any person engaged in the business of selling at retail or wholesale tangible personal property, having or maintaining within this state directly or by any subsidiary, an office, distribution house, sales house, warehouse or other place of business or any agents operating or soliciting sales or advertising within this state under the authority of the vendor or its subsidiary, regardless of whether the place of business or agent is located in the state permanently or temporarily or whether the vendor or subsidiary is qualified to do business within this state. Agents acting under the authority of the vendor include but are not limited to truckers, peddlers, canvassers, salespersons, representatives, employees, supervisors, distributors, delivery persons or any other persons performing services in this state[.]

Wyo.Stat. § 39-6-502. Barcon further supports its limited reading of the Use Tax Act by relying on an earlier version of the Act which applied the tax to property purchased from retailers. *See* Wyo.Stat. §§ 39-309 through 39-335 (1957 & Supp. 1975) (amended 1977). Barcon does not respond to the Board of Equalization's argument that the sales tax and the use tax must be complementary.

After this review, we have no difficulty in agreeing with the Board of Equalization that the Use Tax Act is "poorly worded." The fact that both interpretations of the language are potentially viable directs our conclusion. The language of the Use Tax Act is ambiguous in proclaiming its intention to tax transactions originating out-of-state involving used property from entities that are not in the business of selling such items. *Tenneco Oil Co.*, 694 P.2d at 100. The ambiguous nature of the Use Tax Act requires a determination of legislative intent as a matter of law. *See Allied–Signal, Inc.*, 813 P.2d at 219 and *Exxon Corp.*, 783 P.2d at 689.

The United States Supreme Court has recognized a normally applied justification for use tax legislation. A use tax is generally regarded as a "necessary complement" to the sales tax which is designed to protect state revenues by diminishing the perceived advantage to residents from traveling out-of-state to make untaxed purchases while also protecting local businesses from out-of-state competition able to offer lower prices because of a reduced tax burden. *D.H. Holmes Co., Ltd. v. McNamara*, 486 U.S. 24, 32, 108 S.Ct. 1619, 1624, 100 L.Ed.2d 21 (1988); *Williams v. Vermont*, 472 U.S. 14, 24, 105 S.Ct. 2465, 2472, 86 L.Ed.2d 11 (1985) (*quoting Leverson v. Conway*, 144 Vt. 523, 481 A.2d 1029, 1032, *appeal dismissed for want of a substantial federal question*, 469 U.S. 926, 105 S.Ct. 316, 83 L.Ed.2d 255 (1984)).

Previous decisions of this court have stated the legislative intent of the Use Tax Act, in general.

"The Wyoming use tax statutes, W.S. 39-6-501 through -518, impose an excise tax upon "persons storing, using or con-

suming tangible personal property" in Wyoming. W.S. 39–6–504(b). The legislature intended that the use tax be complementary to the Wyoming sales tax. *Morrison–Knudson Co., Inc. v. State Board of Equalization*, 58 Wyo. 500, 135 P.2d 927, 932 (1943). *See also* Chap. IV, § 3, Rules and Regulations of the Wyoming State Tax Commission—Department of Revenue & Taxation. The use tax is applied to property purchased outside the state and brought into the state for storage, use or consumption, so as to put that property on an equal footing with property purchased within the state that is subject to the Wyoming sales tax."

*Burlington Northern R. Co.*, 820 P.2d at 995 (*quoting Exxon Corp.*, 783 P.2d at 688). *See also State Bd. of Equalization v. Cheyenne Newspapers, Inc.*, 611 P.2d 805, 809 n. 2 (Wyo.1980). The intent of this state's use tax parallels the usual rationale for similar statutes across the country.[5] Without further inquiry, we have not answered the question, however, of whether the legislature intended to make the use tax applicable to transactions involving used property purchased out-of-state from entities not in the business of selling such items.

Wyoming initially adopted a sales tax with the passage of the Emergency Sales Tax Act of 1935, 1935 Wyo.Sess.Laws ch. 74. The emergency act was in effect for only two years until a comprehensive sales tax and use tax were imposed. The Selective Sales Tax Act of 1937, 1937 Wyo.Sess. Laws ch. 102, and the Use Tax Act of 1937, 1937 Wyo.Sess.Laws ch. 118, were passed during the same legislative session as obvious complements to each other. In *Morrison–Knudson Co.*, this court stated a rule which should guide our efforts to determine legislative intent. "In the absence, then, of a contrary indication in the Use Tax Act, the intention evidently was to apply the same rules and principles, as nearly as possible, to both taxes." *Morri-*

*son–Knudson Co. v. State Board of Equalization*, 58 Wyo. 500, 135 P.2d 927, 932 (1943).

As they existed from 1937 to 1977, the sales tax and use tax continued their complementary nature. Wyo.Stat. §§ 39–286 through 39–308 (1957 & Supp.1975) (amended 1977) (Sales Tax Act); Wyo.Stat. §§ 39–309 through 39–335 (Use Tax Act). The Sales Tax Act imposed: "An excise tax upon every retail sale of tangible personal property made within the State of Wyoming equivalent to three percent (3%) * * *." Wyo.Stat. § 39–291(a). The Use Tax Act directed: "An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from a retailer on or after June 1, 1937, for storage, use or other consumption in this state at the rate of three percent (3%) of the sales price of such property." Wyo.Stat. § 39–311(a). A "retailer" was specifically defined by the Use Tax Act:

"Retailer" means and includes every person engaged in the business of making sales for storage, use or other consumption or in the business of making sales at auction of tangible personal property owned by such person or others for storage, use or other consumption; provided, however, that when in the opinion of the board it is necessary for the efficient administration of this act * * * to regard any salesmen, representatives, servicemen, repairmen, maintenance men, delivery men, appraisers, peddlers or canvassers as the agents of the dealers, distributors, supervisors or employers under whom they operate or from whom they obtain the tangible personal property sold, handled or attended to by them, irrespective of whether they are making sales, service repairs, maintenance, deliveries or appraisals on their own behalf or on behalf of such dealers distributors, supervisors or employers, the board may so regard them and may regard the deal-

---

**5.** An additional rationale exists in Wyoming for a sales tax and a use tax. As a state which does not impose an income tax, the revenue from the sales tax and the use tax provides indispensable operating revenue for essential state and local governmental services. Sales lost to out-of-state purchases directly affect this revenue stream.

ers, distributors, supervisors or employers as retailers for purposes of this act. Wyo.Stat. § 39–310(f).

■ Under the Use Tax Act that existed prior to 1977, we agree with Barcon that the purchase of used equipment out-of-state from a non-retailer for use in Wyoming would not have been taxable. It is undisputed that Barnard was not in the business of selling tangible personal property for use, consumption or sale. However, the question is whether the 1977 legislative amendments to the Use Tax Act, specifically, and the Sales Tax Act, generally, reflect an intent to tax transactions such as the one at issue.

In 1977, the Wyoming legislature considered a major revision of excise tax authorizations for this state. House Bill No. 207, 1977 Wyo.Sess.Laws ch. 51. The proposed bill included revisions of the cigarette tax, gasoline tax, mine products taxes, sales taxes, use tax and inheritance tax. *Id.* The bill contained a stated purpose to eliminate obsolete or fully executed statutes, conform conflicting or duplicitous sections and eliminate "archaic language, sentence structure and form of existing statutes * * *." *Id.*

As proposed, House Bill No. 207 amended the Use Tax Act to adopt most of the language used today. *Compare,* House Bill No. 207, 1977 Wyo.Sess.Laws ch. 51, *with* Wyo.Stat. §§ 39–6–501 through 39–6–518. The adopted form of the Use Tax Act, however, contains an important difference from the proposed language. In proposed House Bill No. 207, the provision that would have become the first sentence of § 504(b) read: "Persons storing, using or consuming tangible personal property *purchased from a vendor* are liable for the tax imposed by this article." 1977 Wyo. Sess.Laws ch. 51 (emphasis added).

House Bill No. 464 specifically amended the language of proposed § 504(b) in House Bill No. 207. House Bill No. 464, 1977 Wyo.Sess.Laws ch. 46. As structured by House Bill No. 464, the first sentence of

§ 504(b) was amended to read: "Persons storing, using or consuming tangible personal property are liable for the tax imposed by this article." The language "purchased from a vendor" contained in House Bill 207 was eliminated by House Bill 464. The record shows that both House Bill No. 207 and House Bill No. 464 were passed by the legislature. House Bill 207, 1977 Wyo. Sess.Laws ch. 51; House Bill 464, 1977 Wyo.Sess.Laws ch. 46.

The intent of House Bill No. 464 is revealed by its preamble, which states:

AN ACT to amend W.S. 39–311(b) and 39–6–504(b); and to repeal W.S. 39–312(i) and 39–6–505(a)(x) relating to use tax; *deleting the provision that the use tax only applies to tangible personal property purchased from retailers;* repealing the use tax exemption of tangible personal property used by nonresidents; and providing for an effective date.

1977 Wyo.Sess.Laws ch. 46 (emphasis added). This language discloses a clearly stated legislative intent to eliminate the provisions of the former Use Tax Act and amend the proposed language of House Bill 207, which limited the taxing authority to purchases from "vendors." [6]

We conclude that the legislature established its intention to permit the imposition of an excise tax on transactions involving the sale of tangible personal property purchased out-of-state from non-vendors and stored, used or consumed in Wyoming from the fact that the amended language of § 504(b) was passed. However, we must review the Use Tax Act's provisions to determine if the language used throughout the act conforms with this established intent to change previous law. We are guided by a presumption that the legislature did not intend futile acts. *Wetering,* 682 P.2d at 1061.

We believe the proper reading of § 504 recognizes that subsection (a) imposes a three percent excise tax on sales in Wyoming. Wyo.Stat. § 39–6–504(a). The excise tax imposed by the use tax does not

---

**6.** House Bill No. 207 substituted "vendor" for the former Use Tax Act's "retailer" term. St.Tax Rep. [Wyo] (CCH) ¶ 60–092. As we shall see, the inconsistent use of the term "vendor" created much of the confusion in the present Act's meaning.

apply to purchases which are taxed under provisions of the Sales Tax Act or other stated exceptions. Wyo.Stat. § 39–6–505(a)(i). So, the use tax is not duplicating the sales tax—it remains complementary.

■ We agree with the substance of the Board of Equalization's interpretation of § 504(a). Under the language of Wyo.Stat. § 39–6–504(a) and the definition of "vendor" in Wyo.Stat. § 39–6–502(a)(viii), a taxing scheme is created which requires any person to collect the use tax imposed if they are engaged in the business of selling at retail and making the applicable transactions while, to some degree, physically present in Wyoming. The "vendor" definition is self-limiting and highly qualified. Among its stated limitations are:

1) any person [7]
2) engaged in the business of selling
3) at retail or wholesale
4) tangible personal property
5) having or maintaining within this state
6) an office, distribution house, sales house, etc.

The "vendor" contemplated by § 504 is not the traditional merchant who is a retail dealer buying products to sell; or, even more generally, the person who transfers property by sale. Black's Law Dictionary 1555 (6th ed. 1990). We agree with the Board of Equalization that the "vendor" meeting the requirements of Wyo.Stat. § 39–6–502(a)(viii) is a more restricted subspecies and that, as detailed in § 504(a), the term "vendor" means a responsible party for collection of the applicable use tax. The "vendor" defined by Wyo.Stat. § 39–6–502(a)(viii) is one whose involvement with Wyoming is probably sufficient to meet the "substantial nexus" commerce clause and "minimum contacts" due process requirements of *Quill Corp. v. North Dakota By and Through Heitkamp*, —— U.S. ——, —— – ——, 112 S.Ct. 1904, 1913–14, 119 L.Ed.2d 91 (1992).[8]

In their readings of § 504, both Barcon and the Board of Equalization ignore the introductory language of § 504(a): "Except as otherwise provided * * *." The effect of the initial limiting language in subsection (a) is to alert the reader that subsection (a) is disjunctive from the remaining subsections. *B & W Glass, Inc.*, 829 P.2d at 817. The language of § 504(b) and § 504(c), together, provide the tax scheme for tangible personal property purchased out-of-state for storage, use or consumption in Wyoming. In § 504(b), the liability for the three percent excise tax imposed by Article 5, the Use Tax Act, is placed on "[p]ersons storing, using or consuming tangible personal property" without regard to whether the property was purchased from a "vendor." Wyo.Stat. § 39–6–504(b). In § 504(c), a presumption is created that the tangible personal property sold by any person for delivery in Wyoming "is deemed sold for storage, use or consumption herein and is subject to the tax imposed by this article * * *." Wyo.Stat. § 39–6–504(c). Both sections include provisions under which no tax liability will be found, such as by proof of a receipt from a registered vendor or evidence of intent to purchase for resale. Wyo.Stat. § 39–6–504(b) and (c).

Our view that both § 504(b) and (c), together, impose a use tax is supported by the legislature's language in the one remaining provision of the statute. In § 504(d), the legislature stated the use tax should be applied to certain computer products. The specific language of the subsection makes computer products "subject to

---

**7.** The term "person" is defined in the general provisions of Wyo.Stat. § 39–1–101(a)(xiii) (Supp.1992) to mean "an individual, partnership, corporation, company or any other type of association and any agent or officer of any partnership, corporation, company or other type of association[.]"

**8.** In *Quill Corp.*, —— U.S. ——, 112 S.Ct. 1904, the United States Supreme Court held that a mail order business did not have to have a physical presence in the state to permit the state to require the business to collect a use tax from in-state customers, but a physical presence in the state was required for the business to have the "substantial nexus" required of the taxing state by the commerce clause. *See National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977).

the provisions of subsections (b) and (c) of this section." Wyo.Stat. § 39–6–504(d).

■ The Use Tax Act, as construed, is complementary to the Sales Tax Act. If a Wyoming resident purchases an item of tangible personal property in Wyoming, the purchase is subject to the sales tax of Wyo.Stat. § 39–6–404(a)(i) which imposes a three percent excise tax on "every retail sale of tangible personal property within the state[.]"[9] If the transaction occurs in Wyoming, but involves a registered[10] "vendor" as defined in the Use Tax Act, Wyo. Stat. § 39–6–502(a)(viii), doing business in Wyoming even temporarily, the use tax is imposed by Wyo.Stat. § 39–6–504(a). If the transaction occurs outside Wyoming, the use tax is imposed under the provisions of Wyo.Stat. § 39–6–504(b) and (c) when the goods are stored, used or consumed in Wyoming. The "person storing, using or consuming" the tangible personal property in Wyoming is responsible for the payment of the use tax. Wyo.Stat. § 39–6–507(b).

The most obvious example of the complementary operation of these provisions is in motor vehicle purchases. *See* Wade R. Habeeb, Annotation, *Sales or Use Tax on Motor Vehicle Purchased Out of State*, 45 A.L.R.3d 1270 (1972 & Supp.1992) (collecting cases). If the vehicle is purchased from XYZ Dealership located in Wyoming, the sales tax is applicable and paid by the purchaser upon registration in Wyoming. Wyo.Stat. § 39–6–404(a)(xi); Wyo.Stat. § 39–6–406. A used vehicle purchased from a neighbor in Wyoming is still subject to the sales tax which is collected on first registration by the new owner. *Id.* If the purchaser goes to another state to buy the vehicle from a dealership, upon return to Wyoming and first use registration by the new owner, the use tax is imposed. Wyo. Stat. § 39–6–504(b) and (c); Wyo.Stat.

§ 39–6–506. The used vehicle purchased from an out-of-state private owner is subject to the same use tax imposition, at first registration, when the vehicle is returned to Wyoming for storage or use. *Id.*

The fact that the property is used by another before its subsequent purchase by a new owner is immaterial. For purposes of the use tax, a first use by the new purchaser occurring in Wyoming creates the taxable event.[11] *Burlington Northern R. Co.*, 820 P.2d at 995; *Exxon Corp.*, 783 P.2d at 688. The fact that the seller is not a "vendor" as defined by the Use Tax Act or even a person who regularly conducts such sales is similarly immaterial except for the means of tax collection. *See* Wyo. Stat. § 39–6–507. It is settled law that sales and use tax statutes apply to casual or incidental sales or even sales which were not necessarily for a profit. *People v. Imperial County*, 76 Cal.App.2d 572, 173 P.2d 352, 354 (1946) (holding County's sale of used surplus equipment to buyers was subject to sales tax).

Barcon attempts to find a contrary indication to the foregoing construction in two specific provisions of the Use Tax Act. First, Barcon argues a "sale," as defined in Wyo.Stat. § 39–6–502(a)(ii), must be made by a "vendor" as defined by Wyo.Stat. § 39–6–502(a)(viii). Second, Barcon contends the interpretation is contrary to the clear language of another provision of the Use Tax Act, Wyo.Stat. § 39–6–507 (hereinafter § 507 or collection provision)` which, in relevant part, requires:

> (b) Every person storing, using or consuming tangible personal property purchased from a vendor who does not maintain a place of business in this state is liable for the tax imposed by this article and shall on or before the last day of

---

9. Under the Sales Tax Act, a "retail sale" is a "sale of tangible personal property to a person for use and not for subsequent resale." Wyo. Stat. § 39–6–402(a)(ii). The sale does not have to be conducted by a "vendor." Unless the sales tax has been paid to a vendor for collection purposes, the purchaser is responsible to pay the tax directly. Wyo.Stat. § 39–6–407(d).

10. A "vendor" registers under the Use Tax Act by compliance with the provisions of Wyo.Stat. § 39–6–503.

11. The eligibility for imposition of the use tax requires a "retail sale" which is defined as, "the sale of tangible personal property to a person for storage, use or consumption and not for subsequent resale[.]" Wyo.Stat. § 39–6–502(a)(i).

each month file a return showing the total sales price of tangible personal property purchased subject to the tax imposed by this article during the preceding month and remit all taxes due to the department. The return shall contain such information as requested by the department. Returns shall be signed by the person liable for the tax or his agent.

Barcon challenges that the "purchased from a vendor" language of the collection provision must relate back to § 504(b) to indicate that it is only when persons store, use or consume tangible personal property acquired from a vendor that the use tax is imposed. The provision, according to Barcon, means no use tax may be imposed on the sale of used property by a non-vendor.

The limited construction favored by Barcon is unsatisfactory in application. The term "vendor" as used in the definition of "sale" in Wyo.Stat. § 39–6–502(a)(ii) and in the collection provision of Wyo.Stat. § 39–6–507(b) is ambiguous. If we apply the construction urged by Barcon, to the "sale" definition, it would limit the use tax to a transfer of title or possession of personal property from a "person engaged in the business of selling at retail * * * tangible personal property, having or maintaining within this state, directly or by any subsidiary, an office, distribution house, sales house, warehouse or other place of business, or any agents * * *." Wyo.Stat. § 39–6–502(a)(ii) and (viii). This construction confuses the administrative and collection function implicit in the definition of the term "vendor," Wyo.Stat. § 39–6–502(a)(viii), with the broader purpose of the act. The reference to a vendor in the definition of "sale," Wyo.Stat. § 39–6–502(a)(ii), must be construed as a reference to the broad, common use of the term as a person who transfers property by sale. Black's Law Dictionary 1555 (6th ed. 1990).

Any other construction would be contrary to reason and destroy the operation of the Use Tax Act. *Deherrera v. Herrera,* 565 P.2d 479, 482 (Wyo.1977).

Similarly, the language of the collection provision, Wyo.Stat. § 39–6–507(b), must be construed in light of the statute's object and purpose. Like its counterpart in the Sales Tax Act, Wyo.Stat. § 39–6–407, the collection provision defines the responsibility of parties collecting the use tax to file returns and make payments. If the party is a "vendor" as defined by Wyo.Stat. § 39–6–502(a)(viii), a specific responsibility is created to collect the use tax imposed. Wyo.Stat. § 39–6–507(a).[12] The "vendor" is required to file a monthly tax return showing the total sales of tangible personal property subject to the tax and remit the taxes due to the Department of Revenue and Taxation. *Id.*

Subsection (b) of the collection provision details a complementary system requiring the purchaser of tangible personal property subject to use tax to file the appropriate tax return and make the necessary payment. Wyo.Stat. § 39–6–507(b). The intent of the language of subsection (b), "purchased from a vendor who does not maintain a place of business in this state," is to differentiate the purchaser's obligation. If the purchase was made from a registered vendor responsible for collecting the use tax, the type defined by Wyo.Stat. § 39–6–502(a)(viii), the purchaser is freed from the obligation to file a return and remit the tax due. However, if the purchase is made from a person not registered, Wyo.Stat. § 39–6–503, and not required to collect use tax under Wyo.Stat. § 39–6–507(a), the language of subsection (b) is intended to make the purchaser liable for the use tax imposed and require the filing of a return and the payment of tax

12. The limitation on the authority of the state to mandate the collection of the use tax dates back to the decision of this court in *Creamery Package Mfg. Co. v. State Board of Equalization,* 62 Wyo. 265, 166 P.2d 952 (1946). The court held that "some one must have a place of business within the State, in order that a compulsory collector of the use tax can come into exis-

tence." *Id.,* 166 P.2d at 959. The court ruled the creamery company did not maintain a place of business in this state because the salesman involved only solicited orders while traveling through Wyoming from Colorado. The salesman had no authority to accept orders, make collections or compromise disputes or bind the company in any way.

**384**

due.[13]  Wyo.Stat. § 39–6–507(b).  As used in § 507(b), the term "vendor" refers again to a person who transfers property by sale.[14]  Black's Law Dictionary 1555 (6th ed. 1990).  It would be inconsistent with the statute's object and purpose and destroy the operation of other provisions to construe this provision otherwise.  *Thomson v. Wyoming In–Stream Flow Committee*, 651 P.2d 778, 787 (Wyo.1982); *Deherrera*, 565 P.2d at 482.

## V.

## CONCLUSION

The decision of the district court is affirmed.

---

**13.**  We recognize the inherent difficulties of enforcement embodied in this provision.  However, the tax at issue in this case was assessed following a routine review by the Department of Audit which was designed, apparently, to detect unpaid use taxes by corporate and business entities.  Other collection means, such as the vehicle registration provisions of Wyo.Stat. § 39–6–506, help insure average citizens pay the use tax on major purchases taking place out-of-state.

**14.**  It is worth noting that in the previous version of the Use Tax Act, the section which stated applicable definitions for relevant terms directed: "The following words, terms and phrases when used in this act * * * have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning."  Wyo.Stat. § 39–310.